## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## County of Brunswick v. Peebles & Purdy Company.

### April 10, 1924.

1. Schools—*Taxes—Right of County to Impose Taxes within Town Constituting Separate School District.*—Under Constitution of 1902, section 136, as amended in 1920, volume 3, Code of 1919 (Pollard's Supp.), pages 10, 11, and the statute law on the subject in force for the years 1921 and 1922, a county has the right to impose taxes for county school purposes upon real estate located in and merchant's capital employed in mercantile business in an incorporated town, which, although a separate school district, is embraced within the territorial limits of the county.

2. Schools—*Levies—Local School Taxes—Towns—Section 136 of the Constitution of 1902.*—Section 136 of the Constitution of 1902 provides that: "The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes." Under well settled rules of construction, the "local school taxes" here mentioned, which the boards of supervisors are authorized and required to levy, certainly include a county school tax, which the boards of supervisors of the counties alone could levy; and such language does not authorize or require the town councils of the towns, which are separate school districts, to levy any county school tax, but only a district school tax within such towns.

3. Schools—*Levies—Local School Taxes—Section 136 of the Constitution of 1902.*—Since the sole amendment to section 136 of the Constitution of 1902, Code of 1919, volume 3 (Pollard's Supp.), pages 10, 11, was confined to the subject of the aggregate rate of levy for any one year allowed to be made by the localities mentioned for establishing and maintaining public schools, and did not touch or affect the authority of the several localities to make their several levies mentioned, so long as they keep within the maximum limit of aggregate levies allowed (as was done in the instant case), it is plain that there is no difference between section 136, as amended, and the original section 136 of the Constitution of 1902, in so far as the question is concerned of whether counties have the right to levy a tax for county school purposes on property within the territorial limits of the

county, including the territory of an incorporated town embraced within the boundaries of the county where the town is a separate school district, and what levies such a town has the right to lay for school-purposes.

4. Schools—*Levies—Local School Taxes—Section 136 of the Constitution of 1902.*—Since the material provisions of section 136 of the Constitution of 1902 are substantially the same in form and precisely the same in effect as those of the Constitution of 1869 on the same subject, it is plain that section 136, in its original and in its amended form, confers upon counties the authority to impose a tax for county school purposes on property within the territorial limits of a town within the county, which is also a separate school district, if the Constitution of 1869 conferred such authority. And that the provision of the Constitution of 1869 did confer such authority is settled.

5. Counties—*Towns—Road Taxes—Taxes for County School Purposes—Levy of County Taxes Upon Town.*—The authority of the legislature to constitute a town within the territorial limits of a county a separate taxing district for road purposes, and to exempt property within the town from county levies for road purposes, upon condition that the town keep up its own streets, alleys, and public roads within its limits, exists because the provisions of the State Constitution on the subject of the authority of the county to levy taxes for road purposes are materially different from the constitutional provisions on the subject of the authority of the county to levy taxes for county school purposes.

6. Schools—*School Levies—Levy by County Upon Property Situated in a Town—Acts 1920, Page 587.*—Acts 1920, page 587, *et seq.*, in the provisions giving the authority to counties and to their boards of supervisors to impose a tax for school purposes, is in the precise language of the original and amended section 136 of the Constitution of 1902. This statute therefore conferred upon the county the authority to levy a county tax for school purposes on property within an incorporated town in the county, although such town was a separate school district. The statute did not attempt to do what it could not have done had it attempted, namely, to take away that authority from the county.

7. Schools—*School Levies—Towns and Counties.*—Under Acts 1920, page 587, *et seq.*, it is plain that the authority of a town, in the matter of the levy and of apportioning and expending school taxes, is confined to the tax which the town was given the authority to levy as a district school tax, and did not in any way affect the authority of the county in which the town is situated to levy the county school tax.

8. Taxes—*School Levies—County Levies—District Levies.*—By the repeal of sections 740 and 2721 of the Code of 1919 by Acts 1920, page 587, the boards of supervisors of the counties and the councils of the towns forming separate school districts were left for a time without any

guiding hand to control them with respect to what levy might be laid for county and what for district school purposes, of the aggregate maximum of levies of one dollar on the hundred dollars of the assessed value of property in any one year. However, since the statute approved March 24, 1922 (Acts 1922, page 737, *et seq.*), went into effect, the county school board is given control of the maximum levy which the boards of supervisors may lay in any one year for county school purposes.

9. STARE DECISIS—*Refusal of Writ of Error.*—The effect of the refusal of a writ of error is to affirm the decision of the court below in that particular case, but the refusal of the writ does not decide the question when involved in any other case in which a writ of error is granted by the court.

Error to a judgment of the Circuit Court of Brunswick county, in a proceeding to correct an erroneous assessment. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

This is a proceeding under the statute, instituted in the court below by the defendants in error, Peebles & Purdy Company (hereinafter called applicant), seeking relief from assessments of certain county levies for county free school purposes, laid by the board of supervisors of the plaintiff in error, the county of Brunswick, for the years 1921 and 1922, upon certain real estate of the applicant located, and certain merchants' capital employed in the mercantile business of the applicant at its place of business, in Lawrenceville, an incorporated town within the territorial limits of the said county, which town is a separate school district; which relief is sought on the ground that under the provisions of the State Constitution and statute law on the subject in force when said levies were laid, the said board of supervisors had no authority to lay such levies on any property within the said town; it being contended by the applicant that under said constitutional and statutory provisions no levy for county school purposes could be

laid on any property within the town by the county or the town, because the town, where it is a separate school district, was thereby constituted a separate taxing district for the purposes of establishing and maintaining public schools, as much apart from the county as if the town were a city; and that the council of the town had the exclusive authority to levy the only local school taxes (being district school taxes), which could be levied for the years mentioned (as well as for subsequent years), which could be lawfully levied upon property within such town.

The court below decided that the position of the applicant was correct, and granted the relief sought. The final order of court granting this relief is the judgment under review.

*B. A. Lewis,* for the plaintiff in error.

*Turnbull & Turnbull,* for the defendant in error.

Sims, P., after making the foregoing statement, delivered the following opinion of the court:

The assignments of error present a single question for our decision, which is as follows:

[1] 1. Did the above mentioned constitutional and statutory provisions confer upon the county the right to impose the taxes in question for county school purposes upon property of the character above mentioned within the town of Lawrenceville, which, although it is a separate school district, is embraced within the territorial limits of the county?

The question must be answered in the affirmative.

The constitutional provisions mentioned above are contained in the amended section 136 of the Virginia

Constitution of 1902, adopted by the people at the election of November 2, 1920 (Code 1919, vol. 3, pp. 10-11), and are as follows:

"*Section 136.  Local school taxes (as amended).*

"Each county, city, town, if the same be a separate school district, and school district is authorized to raise additional sums by a tax on property, not to exceed in the aggregate in any one year *a rate of levy to be fixed by law*, to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining such schools as in their judgment the public welfare may require, provided that such primary schools as may be established in any school year, shall be maintained at least four months of that school year before any part of the fund assessed and collected may be devoted to the establishment of schools of higher grade.  The boards of supervisors of the several counties, and the councils of the several cities, and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes."  (Italics supplied.)

The words italicized constitute the only change in this section of the Constitution made by the amendment thereof from that section as it stood from the time the Constitution of 1902 was adopted until such amendment was made as just stated in 1920.  And the change consisted merely in this:  The original section fixed a limit of "five mills on the dollar" as "the aggregate in any one year" which "each county, city, town if the same be a separate school district, and school district," might impose as a tax on property "to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining such schools as in their judgment the public welfare may require."

Further:  Section 136 of the Constitution of 1902, as originally adopted, made no change in the law as it existed at the time such section was originally adopted. It merely embraced, in such section of the Constitution, provisions which prior to that time were partly constitutional and partly statutory.

The provisions of said section 136 of the Constitution of 1902, as to the authority conferred on counties and school districts to impose the taxes mentioned in the next above paragraph of this opinion, are taken from and are substantially the same as those contained in section 8 of article VIII of the Constitution of 1869, where they appear as follows: "Each county and public free school district may raise additional sums" (*i. e.,* in addition to State school taxes and funds) "by a tax on property for the support of public free schools * * * provided, that any tax authorized by this section to be raised by counties or school districts shall not exceed five mills on a dollar in any one year * * *."

The provisions of said section 136 of the Constitution of 1902, as to the authority conferred on towns, if they be separate school districts, first appeared in the statute law in section 1469 of the Code of 1887, and so far as material, were as follows:

"*Section 1469.  Bounds of districts; towns may constitute separate districts; trustees for same.*—The districts shall correspond in boundaries with the magisterial districts, except that towns of more than five hundred inhabitants shall, if the council of such town so elect, constitute a separate school district; and such council shall have the power to appoint three school trustees * * *."

This section of the Code of 1887 was amended by Acts 1889-90, page 12, by adding the provision to the effect that the trustees should be appointed by the

trustee electoral board in all cases where the school district included territory outside of the corporate limits of the town, except in the case of the town of Liberty. The section was again amended by Acts 1902-3-4, page 810, the amendment consisting, however, merely in certain changes in the form of the phraseology of the statutes; in giving the State Board of Education certain powers not material to the instant case; and in not excepting the town of Liberty from the operation of the statute; and in that form the statute appears as section 668 of the Code of 1919.

The material provisions in the respective Constitutions of 1869 and 1902 which confer upon the counties the authority to levy a county school tax—which authority for that reason could not be taken away by the legislature, even if it tried to do so, as has been repeatedly and uniformly held by this court, as will be hereinafter pointed out—are as follows:

| *In the Constitution of 1869, section 8, art. VIII.* | *In the Constitution of 1902, section 136, as amended.* |
|---|---|
| "Each county * * * may raise additional sums by a tax on property for the support of the public schools * * *." | "Each county * * * is authorized to raise additional sums by a tax on property * * * to be apportioned and expended * * * in establishing and maintaining * * * schools * * *." |

These provisions are substantially the same in form and precisely the same in the effect of expressly conferring upon counties the authority to levy a county tax on property for county school purposes.

There is a particular in which said section 136 of the constitution of 1902 is different from the aforesaid pro-

vision of the 1869 Constitution on the subject of the county school tax, namely, the former contains a provision which puts the Constitution of 1902 into effect as to the right of the county to impose a county school tax, as well as in the particular of the authority of the towns, constituting separate school districts, to levy district school taxes, etc., whereas the aforesaid provision of the 1869 Constitution was dependent upon statutory enactment to put it into effect. Such provision of the 1902 Constitution is as follows:

[2] "The boards of supervisors of the several counties and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes."

Under well settled rules of construction, the "local school taxes" here mentioned, which the boards of supervisors are authorized and required to levy, certainly include a county school tax, which the boards of supervisors of the counties alone could levy; and such language does not authorize or require the town councils of the towns, which are separate school districts, to levy any county school tax, but only a district school tax within such towns.

As said in Cooley on Taxation, as quoted in *Supervisors* v. *Saltville,* as hereinafter set forth: "The district for the apportionment of the State tax is the State, for a county tax the county, and so on. Subordinate districts may be created  *  *  *  but the principle is general, and in all subordinate districts the principle is the same."

Hence there is nothing in the difference between the respective Constitutions mentioned which militates against, but much to confirm, the correctness of the conclusion above reached and stated.

[3, 4] Therefore, since the sole amendment aforesaid

of section 136 of the Constitution of 1902 was confined to the subject of the aggregate rate of levy for any one year allowed to be made by the localities mentioned for establishing and maintaining public schools, and did not touch or affect the authority of the several localities to make their several levies mentioned, so long as they keep within the maximum limit of aggregate levies allowed (as was done in the instant case), it is plain that there is no difference between section 136, as amended, and the original section 136 of the Constitution of 1902, in so far as the question is concerned of whether counties have the right to levy a tax for county school purposes on property within the territorial limits of the county, including the territory of an incorporated town embraced within the boundaries of the county where the town is a separate school district; and what levies such a town has the right to lay for school purposes. And since the material provisions of section 136 of the Constitution of 1902 on the subject are substantially the same in form and precisely the same in effect as those of the Constitution of 1869, as above set forth, it is equally plain that such section 136, in its original, and in its amended form, conferred upon counties the authority to impose the tax above mentioned for county school purposes on property within the territorial limits just mentioned, including the territory within the corporate limits of towns which are within the boundaries of the counties, where the town is a separate school district, if the aforesaid provisions on the subject of the Constitution of 1869 conferred such authority upon the counties. And that the last-named provisions did confer such authority is settled. *Robertson* v. *Preston*, 97 Va. 297, 33 S. E. 618; *Supervisors* v. *Saltville L. Co.*, 99 Va. 640, 39 S. E. 704; *Day* v. *Roberts*, 101 Va. 248,

43 S. E. 362; *Campbell* v. *Bryant*, 104 Va. 509, 52 S. E. 638; *Watkins* v. *Barrow*, 121 Va. 236, 92 S. E. 908.

As said and held in *Robertson* v. *Preston*, 97 Va. at p. 300, 33 S. E. 619, (Speaking of the provisions of the Constitution of 1869 just mentioned): "This section of the Constitution confers upon each county the right to levy a tax upon property for public free schools which the General Assembly has no power to take from it." And the opinion holds that this right of the county to levy such a tax embraces the right of the county to impose such a tax upon property within the corporate limits of a town, which is within the boundaries of the county.

In *Supervisors* v. *Saltville L. Co.*, *supra* (99 Va. at pp. 643-5), 39 S. E. 705, after quoting the provisions of the Constitution of 1869 above quoted, and other portions of the Constitution not material to the instant case, the court in its opinion said and held this:

"This section also conferred upon each county and public school district the power to raise additional sums for public school purposes by a taxation upon property. The legislature gave effect to these provisions of the Constitution by imposing a State public school tax and by providing such machinery as was necessary to enable the counties to levy a tax for county school purposes.

"By section 833 of the Code, as amended (Pollard's Supp., p. 89)" (which is the same statute as section 2721 of the Code of 1919), "the board of supervisors of each county are authorized to levy a tax upon all property in the county assessed with State taxes (with certain exceptions which do not affect this case), sufficient to raise the amount recommended by the county school board in their estimates for county school purposes, or so much thereof as they might allow.

"There can be no question that under these constitu-

tional and statutory provisions, the board of supervisors had the right to levy a tax for county school purposes upon property within their jurisdiction upon which the State imposes taxes.

"In discussing the question of apportioning taxes, Judge Cooley states, as a general principle of taxation, that 'the taxing district through which a tax is to be apportioned must be the district which is to be benefited by its collection and expenditure. The district for the apportionment of a State tax is the State, for a county tax the county, and so on. Subordinate districts may be created for convenience, but the principle is general, and in all subordinate districts, the rule must be the same.' Cooley on Tax (2d ed.) 244, 141; Cooley on Const. Lim. (6th ed.) 610; 1 Desty on Tax., sec. 10, p. 28.

" * * * A city is entitled, under the provisions of article VI of the Constitution, to a separate government, and when incorporated is no part of the county for governmental purposes. But this is not true of a town. Its people and property are still subject to county government for county purposes.

"The town of Saltville, so far as it lies within Washington county, is as much a part of the county as the county is a part of the State, not merely territorially, but governmentally. The citizens of the town have the same rights in the election of county officials, and in the management of county affairs that they had before the act of incorporation. The people and property of the town are as much within the jurisdiction of the county for *all county purposes* as they ever were. (Italics in the opinion as reported.)

"The levy of a county school tax is manifestly for a county purpose. *It is made so by the Constitution*, and the right of the county to impose the tax being derived from the Constitution cannot be taken away by the

General Assembly. *Robertson* v. *Preston*, 97 Va. 296, (33 S. E. 618). This being so, it follows that so much of section two of the charter of the town as declares that property within its corporate limits shall be exempt *from county public school taxes* is unconstitutional and void." (Italics supplied.)

The holding in *Day* v. *Roberts*, *supra* (101 Va. pp. 250-253, 43 S. E. 362), is to the same effect. That holding is approved in *Campbell* v. *Bryant*, *supra* (104 Va. at p. 515, 52 S. E. 638), and again in *Watkins* v. *Barrow*, *supra* (121 Va. at pp. 240-1, 92 S. E. 908).

[5] The authority of the legislature to constitute a town within the territorial limits of a county a separate taxing district *for road purposes*, and to exempt property within the town from county levies for *road purposes*, upon condition that the town keep up its own streets, alleys and public roads within its limits, exists because the provisions of the State Constitution on the subject of the authority of the county to levy taxes *for road purposes* are materially different from the constitutional provisions on the subject of the authority of the county to levy taxes for *county school purposes*.

As said in *Supervisors* v. *Saltville L. Co.*, *supra* (99 Va. at p. 642, 39 S. E. 704): "There is nothing in the Constitution which prohibits or prevents the General Assembly * * * from making the town a separate road district and declaring the lands lying within the town shall be exempt from taxes for roads lying without the town, upon condition that it keeps up its own streets and alleys and the public roads within its limits.

"It is conceded by the board of supervisors that there is no express provision of the Constitution which authorizes them to impose a county road tax" (as there was, as aforesaid, in the provisions of the Constitution of 1869, and was and is, as aforesaid in the provisions of

the original and amended section 136 of the Constitution of 1902 as to county school taxes), "but it is argued that the county levies are made up in part of county road taxes, and, as, by section 2, article VII of the Constitution, they are authorized to fix county levies, therefore they have a constitutional right to impose a road tax for county purposes which cannot be taken away by the General Assembly.

"If the Constitution had declared what taxes should constitute county levies" (as the aforesaid provisions of the Constitution of 1869 did, and as the aforesaid provisions of the original and amended section 136 of the Constitution of 1902 did and do, declaring *county school taxes* to be one of them), "and road taxes had been one of them, there would be much force in the contention made; but the Constitution does not so declare * * *."

The court thereupon held that the legislature could and did, by the charter provision of the town involved in that case, constitute the town a separate taxing district for *road purposes* to the exclusion of the authority of the county to levy taxes for county *road purposes* on property within the town, for the reason that the Constitution had not prohibited that being done by declaring that the county might levy taxes for *road purposes;* whereas the court held that the legislature had no authority under the Constitution to constitute the town a separate taxing district for *school purposes* to the exclusion of the authority of the county to levy taxes for *county school purposes* on property within the town, for the precise reason that the Constitution had declared that the county might levy taxes *for school purposes* and it thereby prohibited the legislature from taking that authority away from the counties.

*Watkins* v. *Barrow, supra* (121 Va. 236, 92 S. E. 908),

in its holding on the subject of the authority of the legislature to constitute a separate taxing district within the county and apart from it for *road purposes*, rests on the same principle and recognizes the same distinction between such authority in the case of *road taxes* as distinguished from the case of *school taxes* as are set forth in *Supervisors* v. *Saltville L. Co.*

The statutory provisions relied on by the county in the instant case as conferring upon the county the right, acting through its board of supervisors, to impose the taxes in question for county school purposes upon property within the town of Lawrenceville, was approved March 20, 1920, and by the terms thereof went into effect on January 1, 1921 (see Acts 1920, p. 587, *et seq.*), and is as follows:

"1. Be it enacted by the General Assembly of Virginia, That each county, city, town, if the same be a separate school district, is authorized and required to raise sums by a tax on property of not less than fifty cents nor more than one dollar in the aggregate on the one hundred dollars of the assessed value of property in any one year, to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining such schools as in their judgment the public welfare may require.

"2. The boards of supervisors of the several counties and councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local taxes, and an additional tax not exceeding twenty-five cents on the one hundred dollars of the assessed value of property may be levied by each county, city, town, if the same be a separate school district, in order to provide for the interest and sinking fund of any loans negotiated or bonds issued for

such purposes, said tax to be levied and collected in accordance with the provisions of this act.

"3. Sections seven hundred and forty and twenty-seven hundred and twenty-one of the Code of Virginia are hereby repealed.

"4. This act shall not be effective unless a proposed amendment to section one hundred and thirty-six of the Constitution of Virginia, submitted, or which may be submitted, by the present general assembly to a vote of the people for ratification at the regular November election of nineteen hundred and twenty, shall be ratified by the people at said election, in accordance with law, in which event this act shall be in force on and after January first, nineteen hundred and twenty-one."

The material provisions of this statute which confer upon the counties the authority to levy a county school tax are as follows:

"1. Each county  *  *  *  is authorized  *  *  * to raise sums by a tax on property  *  *  *  to be apportioned and expended  *  *  *  in establishing and maintaining  *  *  *  schools  *  *  *."

The material provisions of such statute which conform to the aforesaid self-executing provision of section 136 of the Constitution with respect to the levy of the county school tax, are as follows:

"2. The boards of supervisors of the several counties  *  *  *  shall provide for the levy and collection of such local taxes  *  *  *."

[6] As will be observed, this statute, in the provisions giving the authority to counties and to their boards of supervisors to impose a tax for school purposes, is in the precise language of the original and amended section 136 of the Constitution of 1902. It is therefore manifest, for the reasons stated above, that this statute conferred upon the county in the instant case the

authority to levy the taxes in question as a county tax for school purposes on the property of the applicant within the town of Lawrenceville, and the statute did not attempt to do what it could not have done, as aforesaid, had it attempted it, namely, to take away that authority from the county. On the contrary the statute uses the very language of the amended section of the Constitution aforesaid, and, in effect, declares, as that section declares as aforesaid, that such authority in the county exists, and further by express delegation of authority to the boards of supervisors concurs with the Constitution in putting the Constitution into effect as above set forth.

[7] When read in the light of what is said in *Supervisors* v. *Saltville L. Co.*, *supra*, the meaning of this statute is, as we think, perfectly clear. It declares in express terms that the county may levy taxes for school purposes—*i. e.*, it declares that taxes for such purposes constitute county levies. That levy as made in the instant case was for a county purpose, and being a county levy made as authorized by statute, the property of the applicant being within territory which was a part of the county governmentally for county purposes, was subject to the levy, as expressly heretofore uniformly held by this court in the decisions on the subject above cited. Further, in the light of those decisions it is plain that the authority of the town, in the matter of the levy and of apportioning and expending school taxes, was, under this statute, confined to the tax which the town was given the authority to levy as a district school tax, and did not in any way affect the aforesaid authority of the county to levy the county school tax.

[8] It is true that, by repeal of sections 740 and 2721 of the Code by said statute, the boards of supervisors of the counties and the councils of the towns forming

separate school districts were left for a time without any guiding hand to control them with respect to what levy might be laid for county and what for district school purposes, of the aggregate maximum of levies of one dollar on the hundred dollars of the assessed value of property in any one year permitted by the amended section 136 of the Constitution of 1902 (the county and district school boards being the controlling hands as to directing the maximum of such levies under sections 740 and 2721 of the Code, both as to county and district school levies, including levies by the councils of towns constituting separate school districts under section 740 prior to the repeal of those sections); and in the condition of the law after the repeal of those sections, the boards of supervisors did, for a short time, have the power to lay the county levy for school purposes so large as to take for county school purposes the whole local tax permitted by the Constitution for establishing and maintaining the public schools, so as to leave the school districts of the county, including towns therein constituting separate school districts, without any source from which to raise money for school purposes by a district school tax. But the possibility of such a result, which is referred to in argument before us, while theoretically a menace to the welfare of the respective school districts, including towns which are separate school districts, was not a real peril to be apprehended in the practical operation of the statute, as is illustrated by the county levies for school purposes actually laid for the years in question in the instant case—having been thirty-five cents upon the one hundred dollars value of property for 1921, and forty cents upon such value of property for 1922, for county school purposes; leaving the town of Lawrenceville the right to impose a district school tax to the extent of sixty-five cents for 1921 and

·of sixty cents for 1922—doubtless much more than it in fact imposed. The difficulty encountered in the actual ·operation of the school laws has, universally, as we believe, been the reluctance of boards of supervisors to levy as large a county school tax as the welfare of the schools require—not any disposition on the part of such boards to levy an excessive county school tax. However, since the statute approved March 24, 1922 (Acts 1922, p. 737, *et seq.*), went into effect, the county school board is given control of the maximum levy which the boards of supervisors may lay in any one year for county school purposes; so that the aforesaid apprehended evil result of the conflict arising from any action of the ·counties in the premises, with the right of the school districts, including towns as separate school districts, to have needed district school levies laid, could not and ·cannot arise.

Sections 6 and 7 of the last mentioned statute provide as follows:

"Section 6. It shall be the duty of the county (school) board on or before the first day of April of each year to prepare, with the advice of the division superintendent, an estimate of the amount of money which will be needed during the next scholastic year for the support of the public schools of the county. These estimates shall set up the amount of money necessary for overhead charges, for instruction, for operation, for maintenance, for auxiliary agencies, for miscellaneous, in-·cluding treasurers' commissions, and for permanent cap-·italization. The estimates so made shall clearly show all necessary details in order that the board of super-·visors and the taxpayers of the county may be well informed as to every item in the estimate.

"Section 7. On the basis of the estimate mentioned in the preceding section, the county school board shall

request the board of supervisors to fix such a school levy as will net an amount of money necessary for the operation of the schools.  If the board of supervisors refuse to lay such levy as is recommended and requested by the county school board, then, on resolution of the county school board, the judge of the court may, in his discretion, order an election by the people of the county to be held during the month of June to determine whether such levy shall or shall not be fixed."

It will also be seen from a reading of the last mentioned statute that it provides in section 4 that the school trustees of towns constituting separate school districts are made members of the county school boards and the school trustees of each of such towns are given one vote on such board.  So that under such statute each town constituting a separate school district, since such statute went into effect, takes part, through its school trustees, in fixing the amount of county levy for school purposes each year.  This evidences that the legislative construction of the existing constitutional and statutory provisions aforesaid, on the subject of the authority of the boards of supervisors of counties to lay levies for county school purposes on property within towns which are separate school districts but are embraced within the limits of the county, is the same as that which we have held above to be the true construction thereof; as it is manifest that the legislature would not have given to such towns such representation and voting power on the subject, if it had not considered that the county levy for school purposes embraced property within the town, as we have above held that it does.  This would confirm us in the conviction that our construction of the aforesaid statute of 1920 is correct, if further confirmation were needed other than that furnished by the decisions to which we have above referred.

Moreover, it should be borne in mind that the aforesaid statute of 1922 inaugurated a very important change in the operation of our public school laws, by making the county school boards the unit of control of the operation of all public schools outside of cities, and if the construction of section 136 of the Constitution and of the aforesaid statute of 1920 contended for on behalf of the applicant in the case in judgment were correct—namely, that they constitute towns which are separate school districts separate taxing districts for school purposes, as separate from the counties within the boundaries of which they are as if they were cities— that would make a serious breach in that unity of control of the operation of the public schools outside of the cities which said statute of 1922 sought to establish and would in a large measure defeat the legislative purpose in enacting it. This is an additional reason for giving the said statute of 1920 the construction we have given it; thus carrying into effect the manifest legislative intention by harmonizing the construction of the different statutes which deal with the same subjects, which is one of the cardinal rules for the interpretation of statutes which are ambiguous in meaning.

In the order under review, entered by the learned judge of the court below in the instant case, it is stated, in substance, that the decision granting the relief given by such order to the applicant was made for the same reasons as set forth in the opinion of that court in the matter of the application of *Sledge & Barclay Company* v. *Board of Supervisors of Brunswick County,* seeking the same character of relief, the two cases and the relief sought and granted therein being substantially the same—and for the further reason that such decision was affirmed by the Supreme Court of Appeals of Virginia by its action in refusing to grant a writ of error in said

*Sledge & Barclay Company Case.* Upon this subject this will be said:

A petition of the board of supervisors of Brunswick county and of the Auditor of Public Accounts, praying for a writ of error to said order entered by the court below in the said *Sledge & Barclay Company Case,* was presented to and refused by all of the judges of the Supreme Court of Appeals in vacation. A majority of the court is now of opinion, after mature consideration of the question involved, that it was error to refuse the writ in that case. It may be said, however, that the same able and experienced attorney who presented the petition for the writ of error in that case is the attorney who presented the petition in the instant case, and in presenting the latter petition he generously admitted that he was at fault in not more explicitly setting out the question involved than was done in the former petition.

[9] The effect of the refusal of the writ in the former case, however brought about, was to affirm the decision of the court below in that particular case, which released the applicant in that case from the taxes for the particular years there in question, but the refusal of that writ did not decide the question involved in any other case.

For the reasons above given, the instant case will be reversed and final order entered dismissing the application for relief.

> *Reversed and final order dismissing*
> *application for relief.*