## Richmond

HARVEY H. SHIFLET, III, ET AL.

V.

MURRAY L. ELLER, JR.

Record No. 812254.

September 7, 1984.

Present: All the Justices.

*Wayne Lustig (Guy, Cromwell, Betz & Lustig, P.C.,* on brief), for appellants.

*John S. Norris, Jr. (Williams, Worrell, Kelly & Greer, P.C.,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This is the appeal of two negligence cases. In each case a joint tort-feasor had been released by the plaintiffs. Subsequently, the trial court refused to apply the 1979 covenant-not-to-sue statute and ruled that the other joint wrongdoer also had been released. The sole question is whether the statute affects substantive rights of joint tort-feasors or merely impacts procedural aspects of their remedy.

In October of 1977, a motor vehicle operated by appellant Mary W. Shiflet, in which appellant Harvey H. Shiflet, III was a passenger, was in a collision with two other motor vehicles in the City of Virginia Beach. The other vehicles were operated by Eve-rette F. Horton and appellee Murray L. Eller. In separate damage suits filed in 1979, the Shiflets sued Horton and Eller seeking judgments against the defendants jointly and severally. The plain-tiffs asserted the defendants were guilty of simple negligence that proximately caused their injuries.

Effective July 1, 1979, the General Assembly enacted Code § 8.01-35.1, the statute in question. Acts 1979, ch. 697.[1]

---

[1] Code § 8.01-35.1 presently provides:
"**Effect of release or covenant not to sue in respect to liability and contribution. —**

In May of 1981, the Shiflets settled their respective claims with defendant Horton, executing separate documents labelled "Release or Covenant Not To Sue Agreement Pursuant to Virginia Code Section 8.01-35.1, As Amended." These documents discharged Horton from further liability to the Shiflets and purported to reserve all claims or rights that the Shiflets had against Eller. Thereafter, the trial court sustained pleas of release filed by Eller and dismissed with prejudice the plaintiffs' suits against him. We awarded the plaintiffs appeals from the September 1981 final orders and consolidated the cases; for clarity, we will treat them as one.

The plaintiff contends the trial court's ruling that the release of one joint tort-feasor released both ignored the provisions of the statute in question and the terms of the release document, which was drawn in strict compliance with the statute. The court below erred, the plaintiff argues, in refusing to apply the 1979 statute to

---

A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tort-feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater. A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered; and

2. It shall discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

B. A tort-feasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tort-feasor whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tort-feasor which is in excess of what was reasonable.

C. A release or covenant not to sue given pursuant to this section shall be subject to the provisions of §§ 8.01-55 and 8.01-424.

D. This section shall apply to all such covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued."

The original enactment did not refer to releases; references to such documents were added in subsequent years by Acts 1980, ch. 411 and Acts 1983, ch. 181.

The statutes designated in subsection (C) deal with compromises of wrongful death claims and compromises of actions in which persons under disability are parties.

Subsection (D) was added by a 1982 amendment. Acts 1982, ch. 196.

the 1981 release document, even though the plaintiff's cause of action for damages arose in 1977.

The plaintiff admits that prior to the 1979 enactment of Code § 8.01-35.1, the release of one joint wrongdoer released all joint tort-feasors. *Wright* v. *Orlowski*, 218 Va. 115, 120, 235 S.E.2d 349, 352 (1977). Additionally, the plaintiff notes there may be contribution among wrongdoers when the wrong results from negligence and involves no moral turpitude. Code § 8.01-34. The plaintiff also points to the settled rule of construction that statutes are usually presumed to be prospective and not retrospective in their operation, recognizing that legislative enactments may not impair contractual rights nor may vested property interests be destroyed. *Duffy* v. *Hartsock*, 187 Va. 406, 417, 46 S.E.2d 570, 574-75 (1948). Nevertheless, the plaintiff notes, an enactment may operate retroactively if it relates solely to matters of remedy. *Id.*, 46 S.E.2d at 575. Continuing, the plaintiff says "vested right" has been defined as "a right, so fixed that it is not dependent on any future act, contingency or decision to make it more secure." *Kennedy Coal Corp.* v. *Buckhorn Coal Corp.*, 140 Va. 37, 45, 124 S.E. 482, 484 (1924).

The plaintiff contends that when the foregoing principles are applied to the present case, application of the 1979 covenant-not-to-sue statute to the 1981 transaction does not "disturb Eller's so-called vested right of discharge." According to the plaintiff, until such time as payment or settlement by a joint tort-feasor has been made, the discharge of Eller remains a mere possibility, contingent on a future event, and therefore cannot be considered vested.

Analogizing to *Walke* v. *Dallas, Inc.*, 209 Va. 32, 161 S.E.2d 722 (1968), in which we applied the long-arm statutes retroactively and said they create no new cause of action and take away no existing right or remedy, the plaintiff argues that the statute in question likewise creates no new cause of action and does not take away existing rights. Instead, the plaintiff urges, the statute merely creates for a plaintiff a new means by which a plaintiff may pursue its claim. The plaintiff argues: "Like the long arm statutes, Section 8.01-35.1 only operates in the furtherance of the remedy of rights already existing, and thus the statute does not affect the claim itself, but merely affects those consequences which a subsequent, collateral event has upon a claim." *See Hurdle* v. *Prinz*, 218 Va. 134, 235 S.E.2d 354 (1977).

The defendant Eller contends that the plaintiff erroneously dwells on the existence of a "vested" right instead of properly focusing on the presence of a "substantive" right. He argues that the proper analysis is simply to determine whether or not a right of contribution, regardless of when it ripens, involves substantive or procedural rights. Eller argues that if any substantive right is involved, "then any statute affecting that right cannot be applied retroactively to a cause of action which accrued prior to enactment of" the statute in question. He contends the trial court properly decided, in the court's language, "that the substantive rights of the participants were determined in 1977, when this cause of action arose." Thus, Eller concludes, the trial court correctly applied the 1977 law to the 1977 cause of action and decided that the release of one joint wrongdoer released the other. We agree with Eller.

Preliminarily, we observe that "substantive" rights, as well as "vested" rights, are included within those interests protected from retroactive application of statutes. The concept of protection of substantive rights was incorporated by the General Assembly into Virginia civil procedure with the enactment of Title 8.01, effective October 1, 1977. Specifically, § 8.01-1 provides for retroactive application of all provisions of the Title, unless a particular provision "may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) . . . ." Substantive rights, which are not necessarily synonymous with vested rights, are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights. Black's Law Dictionary 1281 (5th ed. 1979). "While all vested rights may be considered substantive . . . it does not necessarily follow that the only subject matter that is considered to be substantive is that which relates to vested rights." *Joseph* v. *Lowery*, 261 Or. 545, 550, 495 P.2d 273, 276 (1972).

Next, we must determine the nature of the right of contribution and when it comes into existence, keeping in mind the difference between a cause of action and a right of action. A right of action is a remedial right to presently enforce a cause of action; operative facts giving rise to a right of action comprise a cause of action. *First Virginia Bank-Colonial* v. *Baker,* 225 Va. 72, 81, 301 S.E.2d 8, 13 (1983). "While a cause of action and a right of

action may accrue simultaneously, they do not necessarily do so." *Id.,* 301 S.E.2d at 13.

In the case of contribution, the cause of action and the right of action do not arise at the same time. "[T]here is a valid distinction between the accrual of the equitable, *inchoate* right to contribution that arises at the time of jointly negligent acts and the maturation of the right to *recover* contribution that arises only after payment of an unequally large share of the common obligation." *Nationwide Mutual Insurance Co.* v. *Minnifield,* 213 Va. 797, 799, 196 S.E.2d 75, 77 (1973). Stated differently, the right to recover contribution "arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable," *Bartlett* v. *Roberts Recapping, Inc.,* 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967), while the cause of action for contribution arises at the time of the jointly negligent acts. "Once in being, although contingent, subordinate, or inchoate, [the cause of action] has an existence in contemplation of law until it is no longer needed as a resource to which the joint tort-feasor may look for relief from an inequitable burden placed upon him by reason of the refusal of another to perform such other's duty by paying his honest share of the common obligation." *Distefano* v. *Lamborn,* 46 Del. 195, 203-04, 81 A.2d 675, 679 (Del. Super. Ct. 1951). This cause of action is a substantive right manifested by the ability of one tort-feasor to seek contribution from another wrongdoer jointly liable and by the ability of a joint wrongdoer to defend successfully a suit by the plaintiff after the plaintiff has released another joint tort-feasor.

Because the cause of action for contribution accruing to Eller, a joint tort-feasor, arose at the time of the jointly negligent acts in October of 1977, it necessarily follows that the 1979 statute in question, which adversely affects that substantive right, cannot be applied retroactively to impair that right. *Carickhoff* v. *Badger-Northland, Inc.,* 562 F. Supp. 160, 164 (W.D. Va. 1983). Such a retroactive application of the enactment would violate Eller's due process rights and would be invalid. *Duffy* v. *Hartsock,* 187 Va. at 416, 46 S.E.2d at 575. *See Strickland* v. *Simpkins,* 221 Va. 730, 734, 273 S.E.2d 539, 541 (1981).

The plaintiff has referred us to cases from other jurisdictions to support the view that no vested or substantive right accrued to Eller before enactment of the statute in question. They are inapposite and we will address only the one upon which principal reliance is placed.

In *Smith* v. *Fenner*, 399 Pa. 633, 161 A.2d 150 (1960), upon facts similar to the case at bar, the court determined that no substantive right was created at the time of the joint wrong because, among other things, the release of one joint tort-feasor did not "increase the measure of liability of" non-released tortfeasors under the statute it was interpreting. *Id.* at 642, 161 A.2d at 155. As Eller points out, such a conclusion would be invalid under Code § 8.01-35.1. This can be demonstrated by a hypothetical based on one of the instant cases. The release document in the Mary Shiflet case recited consideration of $15,000. Assume that she proceeded against Eller and obtained a judgment for $50,000. Under the statute in question, that judgment would be reduced by the amount of the release obtained from her by Horton. Thus, she could enforce her judgment against Eller in the amount of $35,000 and, under the statute, Eller would not be entitled to seek contribution from Horton. Thus, Eller's liability would increase because of enactment of § 8.01-35.1, a situation not contemplated by the *Smith* case. Under the law as it existed before 1979, Eller would be liable ultimately for only one-half of the Shiflet judgment, that is, $25,000. After enactment of the statute, his liability has been increased by $10,000.

The plaintiff also contends that we decided this case favorable to the Shiflets when we stated in *Hayman* v. *Patio Products, Inc.*, 226 Va. 482, 311 S.E.2d 752 (1984), referring to Code § 8.01-35.1, the following: "Since the agreement in the present case [the covenant not to sue for an accident occurring in 1977] was executed in September of 1979, it is subject to the provisions of the statute as originally enacted." *Id.* at 486, 311 S.E.2d at 755. We reject the plaintiff's contention. In the first place, the issue of retroactivity was not raised in that case. Moreover, the foregoing statement was made during a discussion of the several amendments to the statute in question and merely pointed out that the *Hayman* case was being decided under the first version of the statute that was enacted in 1979, and not under the statute as later amended.[2]

---

[2] At the petition stage of this proceeding, but not thereafter, the plaintiffs argued that our action in refusing to grant an appeal in *Esco Elevator Company, Inc.* v. *Dunn, et al.* (Record No. 810560), *petition for appeal denied* (March 12, 1982), *petition for reh'g denied* (April 30, 1982), required reversal of the present cases. In that case, the issue presented in the present case was among 27 errors alleged. There, the trial court overruled a joint tort-feasor's plea of release after covenants not to sue, drafted pursuant to § 8.01-

For these reasons, we hold the trial court correctly determined that issues affecting the substantive right of contribution are to be determined by the law which existed at the time of the tort giving rise to the cause of action for contribution, *Norfolk & Southern R. Co.* v. *Beskin*, 140 Va. 744, 747, 125 S.E. 678, 679 (1924), and properly decided that Code § 8.01-35.1 affects substantive rights of joint tortfeasors, not merely the procedural aspects of their remedy.

Accordingly, the judgments appealed from will be

*Affirmed.*

---

35.1, had been executed in favor of the plaintiff by other joint wrongdoers. That decision "is not a controlling authority under the doctrine of *stare decisis.*" *Town of South Hill* v. *Allen*, 177 Va. 154, 166-67, 12 S.E.2d 770, 775 (1941). The effect of the refusal of the petition for appeal in *Esco*, a case decided without opinion, was to affirm the decision of the court below in that case, but the refusal of that petition did not decide the question involved in any other case. *County of Brunswick* v. *Peebles & Purdy Co.*, 138 Va. 348, 368, 122 S.E. 424, 430 (1924).