COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Decker, Judge O'Brien and Senior Judge Haley
Argued at Richmond, Virginia


CB & PB ENTERPRISES, LLC, D/B/A
 MAACO COLLISION REPAIR AND AUTO PAINTING
 AND HANSON BUTLER
                                                              OPINION BY
v.       Record No. 0046-22-2              JUDGE MARY GRACE O'BRIEN
                                                          JANUARY 17, 2023
BRYANT MCCANTS


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

Padraic K. Keane (Jordan Coyne LLP, on brief), for appellants.

Dirk McClanahan (McClanahan Powers, PLLC, on brief), for
appellee.


In this case of first impression, we address the application of the Virginia Abandoned

Vehicle Act, Code §§ 46.2-1200 to -1207, in an action for conversion of personal property. A jury

found an autobody shop and its owner jointly liable for converting a customer's vehicle. The court

denied a motion for judgment notwithstanding the verdict. For the following reasons, we reverse.

BACKGROUND

In an appeal from the denial of a motion for judgment notwithstanding the verdict, we

consider the evidence and all reasonable inferences in the light most favorable to the prevailing

party—here, appellee Bryant McCants. *Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 266

Va. 582, 590 (2003).

In January 2017, McCants had his 1970 Mustang transported to CB & PB Enterprises, LLC, doing business as Maaco Collision Repair and Auto Painting ("Maaco"), for repair and repainting.[1] Hanson Butler is Maaco's part-owner and operator and had worked on McCants's cars in the past, including the Mustang.

In July 2017, Butler advised McCants that the Mustang was ready to be picked up, but McCants found the work unsatisfactory. Butler agreed to repaint the car, and it remained at Maaco. Butler testified that after repainting the Mustang, he tried several times to get McCants to retrieve his car, without success. Butler testified that he called McCants twice a day for several months; McCants would "answer occasionally" and ask for more time.

Butler also introduced text messages he sent McCants in August and September 2017 advising that the car was ready. McCants responded to an August 22 text message as follows: "can't get over there[;] I will be there Saturday morning @ 8 am. That's the soonest I can make it and I will be there." McCants followed up with an August 28 text message: "I couldn't make it Friday[;] my mother is [in] the hospital but see you soon. I[']m sorry for the delay[.]"

On August 30, Butler sent two more text messages to which McCants later responded, "Hanson[,] I am sorry but I am in the hospital with my mother[;] I will call you later." On September 8, Butler received no response to another text message, and on September 25, he made a final attempt to contact McCants by texting, "Ok. Now what do I have to do to get you to get this car?"

---

[1] McCants introduced an exhibit showing that the Mustang was dropped off on January 31, 2017, but he also testified that this occurred in "maybe summer of 2017." The record further reflects that the Mustang spent time at two other autobody shops for engine repair and interior painting. When the car sustained damage during the transition between those two shops, McCants—who was in New York at the time—had it transported back to Maaco for additional work. The precise drop-off date is not germane to this appeal.

McCants acknowledged that he did not respond to the September 25 text message but testified that he spoke to Butler by phone and advised that he would be "traveling nonstop for the next three to four months." McCants testified that Butler asked him to send someone to inspect the car. Butler denied this phone conversation occurred and testified that he had no contact with McCants after sending the September 25 text message.

Bryan Hairston, a used-car dealer who rented storage space to McCants for his other classic cars, testified that he inspected the Mustang in mid-September 2017 at McCants's request and it still required some painting. Butler testified that Hairston came to Maaco in October, not September, and provided no information about McCants's whereabouts or plans for retrieving the Mustang.

At trial, the parties agreed that McCants had made all required payments to Maaco and was never charged a storage fee, despite a notation on the repair orders that Maaco could charge "Storage 35.00 a Day After 7 Days Complete." Butler explained that although it was Maaco's practice to charge the storage fee, "I didn't charge [McCants] because he was a regular customer, and I just wanted the car off my lot."

After Hairston's visit, Butler began the process to have the Mustang declared abandoned under the Virginia Abandoned Vehicle Act, which involved submitting an online application to the Department of Motor Vehicles. On October 13, 2017, the DMV sent a notice to McCants's address of record in Michigan, advising that the abandoned vehicle process had been initiated and McCants "must reclaim and remove" the car "on or before 10/31/17 to avoid it being sold to a third party or transferred to a demolisher." The notice also advised McCants to contact Butler "immediately" and provided Maaco's business address and phone number. Butler testified that he "was hoping [McCants would] get the letter, see the letter, know I was serious, and come pick up the vehicle."

McCants denied receiving the notice but stipulated that he had no evidence to dispute that the DMV sent it. He explained that his address of record in Michigan was his "first address" and

the location of his parents' house. Although McCants does not have a Virginia driver's license, he produced evidence that Maaco typically invoiced him at a Richmond address.

McCants never retrieved the Mustang, and Butler subsequently applied for and received a certificate of title to it on November 27, 2017. Butler testified that he sold the Mustang for $2,000 in January 2018, but the Maaco mechanic who bought it stated that he paid $3,000. No documentation of the transaction was introduced at trial. McCants did not contact Butler until February 2018, after hearing about the sale from Hairston.

McCants filed a five-count amended complaint alleging a violation of the Virginia Consumer Protection Act, fraud, conversion, breach of contract, and unjust enrichment. A three-day jury trial occurred. At the close of the evidence, the court struck the unjust enrichment count. The jury was instructed that the parties stipulated that Butler was Maaco's employee and that Butler and Maaco "would be jointly and severally liable and responsible for any liability or damages resulting from the actions of Hanson Butler in this case."

The jury found Butler and Maaco jointly liable solely on the conversion count and awarded $78,500 in compensatory damages with interest from November 27, 2017. The court subsequently denied Butler and Maaco's motion for judgment notwithstanding the verdict and entered judgment in McCants's favor.

ANALYSIS

"[W]here the trial court has declined to . . . set aside a jury verdict, the standard of appellate review in Virginia requires [appellate courts] to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating and Air Conditioning, Inc.*, 297 Va. 539, 547-48 (2019) (first and second alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)). We will reverse if "it appears from the evidence that the judgment is plainly

wrong or without evidence to support it." *Upper Occoquan Sewage Auth.*, 266 Va. at 590. An issue of statutory construction, however, "is a pure question of law which we review de novo." *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022) (quoting *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016)). "When interpreting a statute, a court 'must presume that the General Assembly chose, with care, the words that appear in [the] statute, and [it] must apply the statute in a manner faithful to that choice.'" *Sorrell v. Commonwealth*, 74 Va. App. 243, 246 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)).

Butler and Maaco contend that the court erred by failing to order judgment notwithstanding the verdict for two reasons. First, they argue that McCants lacked standing to pursue a conversion claim because he had waived all property rights in the car pursuant to the Virginia Abandoned Vehicle Act. Second, they argue that "no evidence was presented to the jury by which the jury could conclude that [Butler and Maaco] did not properly follow the requirements of the Virginia Abandoned Vehicle [Act]" and therefore, as a matter of law, they could not be liable for conversion. Although we find that McCants had standing to assert his conversion claim, we conclude the court erred in affirming the jury verdict in his favor.

## I.  Standing

"Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000). "An action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Id.* Although Butler and Maaco argue that McCants lacked standing because he "had no property right in the [Mustang] at the time he filed the lawsuit," the question of standing is whether the party had a property interest at the time of the alleged conversion. *See id.* (holding that plaintiffs lacked standing

- 5 -

because they "were not entitled to the immediate possession of the [property] at the time [it] allegedly [was] wrongfully converted"); *see also Mackey v. McDannald*, 298 Va. 645, 661-62 (2020) (affirming conversion claim when the party had rights to the property "[a]t the time" it was converted).

We review de novo the question of whether the facts were sufficient to establish standing, as this issue presents a question of law. *Platt v. Griffith*, 299 Va. 690, 692 (2021). At trial, McCants presented evidence supporting his claim that the conversion occurred when Butler wrongfully activated the Virginia Abandoned Vehicle Act on or about October 13, 2017. There is no dispute that McCants owned the Mustang at the time of this alleged taking: he testified about purchasing the car, he presented an exhibit of title issued in 2016, and he confirmed that he only left the car with Maaco for purposes of repair and repainting work. Although McCants lost title by the time he filed his lawsuit, he was entitled to immediate possession of the Mustang at the time of the alleged conversion and thus had standing to assert the claim. *See Economopoulos*, 259 Va. at 814.

## II. Jury's Conversion Verdict

McCants was required to prove a "wrongful exercise or assumption of authority" over his car that "depriv[ed] him of . . . possession" or an "act of dominion wrongfully exerted . . . in denial of [his] right, or inconsistent with it." *Mackey*, 298 Va. at 659 (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994)); *see also Economopoulos*, 259 Va. at 814.

McCants claims that the wrongful exercise of control occurred when Butler began the abandoned vehicle process online at the DMV's website. On appeal, Butler and Maaco respond that no evidence was presented from which a jury could conclude that they failed to follow the requirements of the Virginia Abandoned Vehicle Act and, therefore, the court erred in affirming the jury verdict against them. We agree and reverse on that basis.

Code §§ 46.2-1200 through -1207 establish an abandoned vehicle process (AVP) for applicants to dispose of an abandoned motor vehicle, trailer, or manufactured home left on a Virginia highway, public property, or private property.[2] Code § 46.2-1200 defines an "[a]bandoned motor vehicle," in relevant part, as one that "[h]as remained for more than 48 hours on private property without the consent of the property's owner, regardless of whether it was brought onto the private property with the consent of the owner or person in control of the private property." Code § 46.2-1200(2).

Code § 46.2-1202(A) directs that "[a]ny person in possession of an abandoned motor vehicle shall initiate with the [DMV], in a manner prescribed by the Commissioner, a search for the owner and/or lienholder of record of the vehicle." Pursuant to this statute, the DMV created and administers an online AVP for use by eligible applicants. After an applicant initiates the search, the DMV checks its own records, the records of a national crime database, and the records of a national title database for owner and lienholder information. Code § 46.2-1202(A).

Based on its search results, the DMV mails certified letters to the owner and lienholder, if any, at their address(es) of record, advising that the AVP is in progress and that they have 15 days from the date of notice to reclaim the vehicle. Code § 46.2-1202(B). If the statutory requirements are followed, the notice "shall be sufficient regardless of whether or not it was ever received." *Id.* Following the notice, "if the motor vehicle remains unclaimed, the owner and all persons having

---

[2] The Virginia Abandoned Vehicle Act was amended in 2020 and 2021. *See* 2020 Va. Acts chs. 964, 965; 2021 Va. Acts Sp. Sess. I ch. 374. The amendments did not change the relevant language. Nevertheless, we cite the version of the statute in effect when the events giving rise to McCants's conversion claim occurred. *See Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 531-32 & n.8 (2006) (citing statute in effect at the time of the alleged tort); *see also Shiflet v. Eller*, 228 Va. 115, 121 (1984) (stating that issues related to a party's remedial rights are determined by the law prevailing at the time a cause of action accrues).

security interests in the motor vehicle shall have waived all right, title, and interest in the motor vehicle." *Id.*

McCants contends that Butler wrongfully activated the AVP because Maaco had outstanding work to complete on the Mustang and never charged a storage fee. Regardless, the statute only requires that the vehicle "remain[] for more than 48 hours" on the property "without the consent of the property's owner." Code § 46.2-1200(2). The evidence established that Maaco no longer consented to the presence of the Mustang on its property. Given that a number of weeks had passed during which Butler was frequently communicating, by various means, that McCants should remove the Mustang from Maaco's property, it was evident that Maaco had withdrawn consent by the time of Butler's final text message to McCants on September 25, 2017, to which McCants never responded. Well more than 48 hours later, Butler initiated the AVP online, causing the DMV to send a certified letter on October 13, 2017 to McCants's address of record in Michigan informing him that he had until October 31, 2017 to remove the vehicle. McCants acknowledged that the Michigan address was his "first address" and where his parents were living; presumably, he had previously provided this address to the DMV and never updated it. Butler and Maaco did not have to prove that McCants actually received the DMV's notice, only that it was sent in compliance with the statute. Code § 46.2-1202(B) ("Such notice, when sent in accordance with these requirements, shall be sufficient regardless of whether or not it was ever received."). The Mustang remained unclaimed, and therefore, under the statute, McCants was deemed to have waived "all right, title, and interest in the motor vehicle" as of October 31, 2017. *Id.*

McCants contends that because the Mustang was on Maaco's lot and under contract for repairs, Butler wrongfully initiated the AVP by acting individually and without Maaco's authorization. His argument, however, is not supported by the evidence or the Virginia Abandoned Vehicle Act.

Under the Act, "[a]ny person in possession of an abandoned motor vehicle" is authorized to initiate the AVP. Code § 46.2-1202(A). Not only did the evidence establish that Butler was a "person in possession" of the Mustang and thus statutorily eligible to initiate the AVP, but it also demonstrated that Butler acted with Maaco's authorization. Butler is the part-owner and operator of Maaco and the primary person with whom McCants interacted. It was Butler who initially gave consent for McCants to bring the Mustang to the property for repairs and services, and it was Butler who made repeated attempts to persuade McCants to retrieve it. Although the DMV's notice did not mention Maaco by name, it directed McCants to contact Butler at Maaco's business address and phone number. The fact that Butler ultimately received title to the Mustang and conducted a personal sale does not contradict that he acted with Maaco's authorization to take whatever steps were necessary to remove the Mustang from Maaco's property. Additionally, the parties stipulated that Butler and Maaco would be jointly and severally liable, which indicates that Maaco authorized Butler's conduct.

No evidence was presented to the jury from which it could conclude that Butler acted without Maaco's authority in initiating the AVP or did not properly follow the requirements of the Virginia Abandoned Vehicle Act.[3] McCants's ownership interest in the Mustang ended on October 31, 2017, when he failed to reclaim or remove the vehicle as instructed by the DMV in

---

[3] McCants argues on appeal that the jury could have found that Butler and Maaco committed the conversion by damaging the car prior to activating the AVP, thereby making compliance with the Virginia Abandoned Vehicle Act irrelevant. Although Butler testified that he ultimately sold the car for $2,000 in January 2018, no evidence established when any damage or diminution in value occurred. Therefore, based on our review of the record, we find no evidence from which a jury could conclude—without speculation—that the Mustang sustained damage prior to McCants's loss of his ownership interest on October 31, 2017. *Cf. Thompson v. Bacon*, 245 Va. 107, 112 (1993) ("A plaintiff may not recover when the jury must resort to speculation or conjecture to determine the cause of the damages."). Additionally, we note that the jury rejected McCants's breach of contract claim premised on the same theory that Butler and Maaco allowed the Mustang to deteriorate while it was in their possession.

accordance with Code § 46.2-1202(B).  Because McCants failed to prove a "wrongful assumption or exercise of the right of ownership" over the Mustang prior to his loss of the ownership interest, *Economopoulos*, 259 Va. at 814, the jury verdict in favor of his conversion claim was plainly wrong and without evidentiary support, *Upper Occoquan Sewage Auth.*, 266 Va. at 590.

Accordingly, we find that the court erred by denying the motion for judgment notwithstanding the verdict.

*Reversed and final judgment.*