754 F.2d 1111
 40 UCC Rep.Serv. 857
 Dorothy M. FARISH, Guardian for Shirley F. FARISH, Appellant,
v.
COURION INDUSTRIES, INC. and Otis Elevator Company, Appellees.
Nancy L. BLY, Administratrix of Wayne Allen Bly, deceased, Appellant,
v.
OTIS ELEVATOR COMPANY, a New Jersey Corporation, Appellee.
 Nos. 82-1964, 83-2203.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1984.
Decided Feb. 11, 1985.
Rehearing In Banc Denied April 22, 1985.
 
 Thomas Wolf, Richmond, Va. (Thomas W. McCandlish, Mezzullo, McCandlish & Framme, Richmond, Va., Paul M. Peatross, Jr., Carter & Peatross, Charlottesville, Va., on brief), for appellant in 82-1964.
 Stephen D. Annand, Alexandria, Va. (Cohen, Annand, Dunn & Sinclair; Charles Shepherd Cox, Jr., Alexandria, Va., on brief), for appellant in 83-2203.
 Frank N. Cowan, Richmond, Va. (Deborah S. O'Toole; Cowan, Owen & Nance, Richmond, Va., on brief), for appellee in 82-1964.
 Jean-Pierre Garnier, Falls Church, Va. (G. Kenneth Miller, May, Miller & Parsons, Richmond, Va., on brief), for appellee in 83-2203.
 Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges. (En banc).
 SPROUSE, Circuit Judge:
 
 
 1
 Under the law of Virginia prior to 1962 a person injured by a defective product could not maintain an action against the manufacturer for injuries caused by the defect without privity of contract.[1] The Virginia legislature abolished this privity requirement in 1962. We decide two separate appeals in Virginia diversity cases that have been consolidated for en banc consideration: Farish v. Courion, 722 F.2d 74 (4th Cir.1983) (Sprouse, Ervin, and Wyzanski, JJ.) and Bly v. Otis Elevator Company, 713 F.2d 1040 (4th Cir.1983) (Winter, Phillips, and Butzner, JJ.). The principal issue in both Farish and Bly is whether the statute abolishing the privity requirement applies retroactively to an injury incurred after the enactment of the statute but caused by a product manufactured and transferred prior to the statute's enactment.
 
 I.
 Farish v. Courion
 
 2
 Farish involves an appeal by Dorothy M. Farish, wife and guardian of her husband, Shirley F. Farish, of the district court's Rule 12(c) dismissal of her claim for damages for his injuries. Shirley Farish was an employee of the University of Virginia, and was working within the scope of his employment as a plumber when he was totally and permanently injured in a University Hospital elevator on April 6, 1981. He was removing a tool cart from a freight elevator when the lower part of the elevator door fell to the floor below. The unsupported top portion of the door then crashed downward, striking the rod arm which had held the lower door. The rod arm was propelled upward by the force of the blow and struck Farish in the head.
 
 
 3
 Courion[2] manufactured the elevator door in Missouri and sold it to the University's contractor in 1958. Dorothy Farish, as guardian, brought this action against Courion,[3] alleging negligence in the design, manufacture, testing, and inspection of the elevator door. She also alleged breach of warranty by Courion. The district court dismissed these claims because the injured party was not in privity with Courion. The panel of this court affirmed that dismissal, holding that the Virginia anti-privity statute was prospective only, and therefore did not abolish the privity requirement in actions against manufacturers for injuries caused by products manufactured and transferred prior to the enactment of the anti-privity statute.
 
 II.
 Bly v. Otis Elevator Company
 
 4
 Bly involves an appeal by Nancy Bly, administratrix of the estate of her son, Wayne Bly. The deceased was fatally injured in September 1979 while operating a lift truck at the Avtex Fibers Plant in Virginia where he was employed. The truck was equipped in the front with a lift mechanism used to transport large canisters throughout the factory, and in the rear with a shin-high guard designed to provide protection from objects encountered while the truck was traveling in reverse. Because the large canisters impair visibility to the front, the trucks are driven in reverse around the plant, requiring operators to look over their shoulders in the direction of travel.
 
 
 5
 The particular truck Bly was driving when he sustained injury was manufactured in Ohio by Otis's predecessor, Baker Raulang Co., which sold the truck to the predecessor-in-interest of Avtex in 1944. Baker Raulang last exercised control over the truck in 1948, when it modified the truck's lift mechanism.
 
 
 6
 The parties agree that Bly was injured in September 1979 when he backed his truck without looking behind him and ran into a canister perched on the front end lift of another truck. Because that canister was raised off the floor, the shin-high guard on Bly's truck slipped underneath, and Bly was crushed between the canister and the controls of his truck.
 
 
 7
 The wrongful death action by Bly's administratrix sought relief on the basis of negligence and breach of warranty for alleged defects in the lift truck. At the conclusion of the evidence, the district court granted Otis's motion for a directed verdict on the negligence count, holding as a matter of law that Bly's contributory negligence barred recovery.[4] Accordingly, the case went to the jury solely on a theory of breach of the implied warranty of merchantability. The jury returned a verdict for Bly's mother as administratrix on that theory and awarded her $250,000 damages.
 
 
 8
 Otis appealed to this court and the original panel deciding that appeal held that the trial court erred in instructions to the jury on the manufacturer's duty to warn. That ground for reversal and remand is not involved in the instant appeal. In ruling against Otis on its contention that the action should have been barred by lack of privity, however, the Bly panel indicated that the Virginia anti-privity statute abolished the privity requirement in actions against the manufacturer even as to products manufactured before the enactment of the statute.[5] Although the trial court in Bly was instructed to try the case again, by the time it received the case on remand Farish had been decided. The trial court, basing its holding on Farish, then dismissed the case sua sponte because there was no privity between Otis and the deceased Bly. Since there was a conflict between our panel decisions in Farish and Bly on the privity issue, we granted rehearing en banc in both cases and consolidated them for this appeal. We specifically declined to rehear that portion of Farish reversed by the original panel.[6]
 
 III.
 
 9
 The Consolidated Appeal: The Privity Issue
 
 
 10
 Farish and Bly contend that Virginia Code Sec. 8.2-318 (1965), in abolishing the requirement of privity between a person injured by a product and its manufacturer, applies retroactively to products that were defectively manufactured and transferred prior to 1962 when the predecessor to this statute was passed. Va.Code Ann. Sec. 8-654.3 (Supp.1964). Courion and Otis argue to the contrary that the 1962 statute applies only prospectively to products manufactured after 1962 even if the injuries occurred after that date.
 
 
 11
 In the last half century few substantive areas of the law have escaped disputes over the retroactive application of new principles enunciated by legislation or by judicial decisions. The field of products liability has been no exception. In many states products liability laws have evolved solely by judicial decision. In others the legislatures have reshaped these laws and in those instances the approach for determining retroactivity vel non still involves the application of the traditional rules of statutory construction to determine legislative intent. See Orland & Steving, Retroactivity in Review: The Federal and Washington Approaches, 16 Gonzaga L.Rev. 855 (1981). The change in Virginia products liability law we are considering has been effected solely by legislation. Speidel, The Virginia "Anti-Privity" Statute: Strict Products Liability Under the Uniform Commercial Code, 51 Va.L.Rev. 804 (1965). The Supreme Court of Virginia has adopted clear and unwavering rules of statutory construction for resolving issues concerning retroactivity of statutes and it is under those rules that we decide the principal issue in this case.
 
 
 12
 Legislative enactments are applied prospectively unless the legislature indicates a contrary intent or the statute relates to remedies or procedural matters. Paul v. Paul, 214 Va. 651, 203 S.E.2d 123 (1974); Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 30 S.E.2d 686 (1944); Ferguson v. Ferguson, 169 Va. 77, 87, 192 S.E. 774, 777 (1937). Absent plain legislative intent, statutes will not be applied retroactively to create new duties and obligations or to disturb vested rights. Walke v. Dallas, Inc., 209 Va. 32, 161 S.E.2d 722 (1968); Phipps v. Sutherland, 201 Va. 448, 111 S.E.2d 422 (1959). Statutes in derogation of the common law are not to be extended beyond their express terms. Chesapeake & Ohio Railway v. Kinzer, 206 Va. 175, 142 S.E.2d 514 (1965); Sellers v. Bles, 198 Va. 49, 92 S.E.2d 486 (1956).
 
 
 13
 The learned trial court in Farish, during its hearing on the motion to dismiss for lack of privity, lamented that it had recently entertained a rash of questions in diversity cases on the retroactivity of statutes. It hoped for a definitive ruling from the Virginia Supreme Court providing guidance concerning statutory change of substantive rights. The Supreme Court of Virginia obliged and recently reiterated its traditional view of the manner in which to decide whether a newly enacted state statute is to be applied prospectively or retroactively. Shiflet v. Eller, 228 Va. 115, 319 S.E.2d 750 (1984); see also Sargent Electric Co. v. Woodall, 228 Va. ---, 323 S.E.2d 102 (1984). In Shiflet, Justice Compton, writing for the court, observed "that 'substantive' rights as well as 'vested' rights, are included within those interests protected from retroactive application of statutes." 319 S.E.2d at 753. After affirming that the Virginia general assembly had endorsed that concept in its codifications of 1977, the court went on to define substantive rights as those "which are not necessarily synonymous with vested rights, [but] are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights." Shiflet, 319 S.E.2d at 754 (quoting Blacks Law Dictionary 1281 (5th ed. 1979)).
 
 
 14
 In Shiflet, the Virginia Supreme Court considered whether legislation affecting the rights of joint tort-feasors was to be applied retroactively. The state legislature in 1979 enacted a "Covenant-Not-To-Sue" statute. Va.Code Sec. 8.01-35.1 (1984). Prior to that time, an injured party's release of one joint tort-feasor released the others. The Covenant-Not-To-Sue statute provided procedures whereby one joint tort-feasor could be released and a suit maintained against the others and provided concomitant rules governing contribution among tort-feasors and permissible recovery against unreleased tort-feasors. The injury in Shiflet occurred in 1977, suits were filed in 1979, and the Shiflets settled their claims against one joint tort-feasor in 1981, executing a "Release or Covenant Not To Sue Agreement Pursuant to Virginia Code 8.01-35.1, As Amended."[7] The Virginia Supreme Court held that despite the parties' intent, the other joint tort-feasor was released under the law as it existed when the accident occurred in 1977. In holding that the 1979 "Covenant-Not-To-Sue" statute could not be applied retroactively, the court explained that the pre-1979 common law right of contribution between the joint tort-feasors carried with it a right to be released when a joint tort-feasor was released. The Court found this to be a substantive right that arose at the time the joint tort-feasor relationship was created and could not be retroactively affected by new legislation.[8] We find the Shiflet analysis instructive in our necessary speculation as to how the Supreme Court of Virginia would view the rights affected by the Legislature's alteration of the privity requirement. A review of the legislation and analysis of Shiflet against the background of traditional Virginia precedent leads us to conclude that the 1962 changes affected substantive rights and could not be retroactively applied.[9]
 
 
 15
 As we have indicated, the privity requirement for manufacturers' liability was eliminated by the Virginia Legislature in 1962.
 
 
 16
 Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably expect to use, consume, or be affected by the goods; however, this section shall not be construed to affect any litigation pending at its effective date.
 
 
 17
 Va.Code Ann. Sec. 8-654.3 (Supp.1964). In 1965, this statute was incorporated into the newly enacted Virginia Commercial Code, Va.Code Sec. 8.2-318 (1965), and amended with minor changes. Significantly, the only change concerning the operative date of the privity statute was the substitution of the phrase "on June twenty-nine, nineteen hundred sixty-two" for the words "at its effective date." The provision has remained unchanged since the 1965 amendments.[10] The legislature did not expressly indicate whether this law was to operate completely prospectively or retroactively or partially prospectively and partially retroactively.
 
 
 18
 Applying the principles of statutory construction adopted by the Supreme Court of Virginia, and reasoning from its concept that substantive rights can not be retroactively altered by legislation, we are compelled to agree with the district court that the Virginia legislature intended Secs. 8.01-223 and 8.2-318 to apply prospectively only from the dates of their enactments. The statutes are in derogation of the common law, and there was no legislative expression that they were to be applied retroactively. Although Farish and Bly contend that the abolition of the requirement for privity in these products liability actions does not affect substantive rights but only creates a remedy for the pursuit of rights, we firmly believe that the "anti-privity" statute was not remedial in nature but affected substantive rights. The pre-1962 Virginia rule barred an individual in the chain of possession of a product from suing a manufacturer under the theory of implied warranty unless he was in privity with the manufacturer. See H.M. Gleason & Co. v. International Harvester Co., 197 Va. 255, 88 S.E.2d 904 (1955). This was not a question of procedural remedy; such an individual simply had no right to maintain an action. Similarly, the manufacturer had a right not to be sued for breach of implied warranty by a person not in privity with it. Again, we are reinforced in this belief by the court's discussion of substantive rights in Shiflet.
 
 
 19
 This interpretation of the Virginia legislature's intent, however, does not dispose completely of the appeal. Farish and Bly contend that Section 8.10-101 of the 1966 Virginia Commercial Code, into which the anti-privity statute was incorporated, makes the date of the accident the crucial time for determining whether the privity defense may be raised. Since the decedents' accidents occurred in 1979 and 1981, well after the effective date of the statute abolishing privity, they argue that even a prospective application of the statute bars recognition of the privity defense in these cases.
 
 
 20
 Section 8.10-101 contains a general statement regarding the effective date of the Virginia Commercial Code: "This Act [Commercial Code] shall become effective on January one, nineteen hundred sixty-six. It applies to transactions entered into and events occurring after that date." (Emphasis added.) This language is advanced to support the argument that the date of the accident, not the date of the sale, is the controlling transaction for determining whether the privity defense can be invoked. We find no authority for such an interpretation from the drafters of the Code, and cases from other jurisdictions vary depending on differences in statutory language and purpose.
 
 
 21
 Two cases cited by Farish and Bly--Sides v. Richard Machine Works, Inc., 406 F.2d 445 (4th Cir.1969) and Barnes v. Sears, Roebuck & Co., 406 F.2d 859 (4th Cir.1969)--hold correctly that, for the purpose of applying the statute of limitations, the clock runs from the time of the transaction fixing the liability. Those cases, however, do not bear on the "transaction" issue in this case, and indeed their citation completely obscures the question. In Sides and Barnes, the substantive duties of the defendants were not in question. The applicable law plainly recognized that the defendants were obligated to safeguard the injured parties from the sort of harm they ultimately suffered. The decisions in those cases turned on the issue of which "transactions" constituted breaches of the defendants' recognized duties. Here, in contrast, we are concerned with whether the substantive duty to protect Farish and Bly from this sort of harm existed at all. The relevant transactions, then, are not the unfortunate accidents, but the sale of the forklift truck in 1944 (or its modification in 1948) and the sale of the elevator in 1958.
 
 
 22
 Likewise, decisions from other jurisdictions give little support to their argument. Forrest City Machine Works, Inc. v. Aderhold, 273 Ark. 33, 616 S.W.2d 720 (1981); General Motors Corp. v. Tate, 257 Ark. 347, 516 S.W.2d 602 (1974); Wansor v. George Hantscho Co., Inc., 243 Ga. 91, 252 S.E.2d 623 (1979); Adams v. Buffalo Forge Company, 443 A.2d 932 (Me.1982);[11] Hoffman v. Howmedica, 373 Mass. 32, 364 N.E.2d 1215 (1977). The courts in those cases interpreted statutes varying both in policy, purpose and language from the Virginia statute we interpret. In view of the guidance provided by Virginia precedents defining substantive rights and the unequivocal statement of that court that neither substantive nor vested rights are affected retroactively, parsing statutes from other jurisdictions is not only unnecessary but inappropriate.
 
 IV.
 
 23
 Other Issues Raised by Farish and Bly on En Banc Appeal
 
 
 24
 Both Farish and Bly argue that even if the anti-privity statute had never been enacted, lack of privity would not be a bar to their actions. They contend correctly that even if the privity doctrine were still in effect, Virginia has long excepted from its control injuries caused by inherently dangerous products. Likewise, they argue that under Virginia common law a party injured by an imminently dangerous product could sue the manufacturer even though no privity existed between the injured party and the manufacturer. Farish and Bly fail to recognize, however, that, in Virginia, these exceptions only apply in negligence actions. Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4th Cir.1962); Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir.1951); General Bronze Corp. v. Kostopulos, 203 Va. 66, 122 S.E.2d 548 (1961); Harris v. Hampton Roads Tractor & Equipment Co., 202 Va. 958, 121 S.E.2d 471 (1961). Bly's mother as administratrix cannot avail herself of this negligence theory because the trial court held, as a matter of law, that her son was guilty of contributory negligence. She did not appeal that ruling and even if she had, a review of the evidence demonstrates that the trial court was correct in directing a verdict on that issue. Farish never raised the issue of either inherently or imminently dangerous characteristics of the products. The trial court, however, held a full hearing on Courion's motion to dismiss for lack of privity. Courion's counsel, in outlining the law of privity, pointed out exceptions such as inherently dangerous products, food substances, sealed containers and the like. Farish not only made no claim that the elevator door was an imminently or inherently dangerous product, but conceded that the only issue was whether or not the Virginia anti-privity statute controlled. Likewise, that issue was not presented in her briefs to the first panel of this court considering her appeal. It is well settled that we will not, in the absence of clear error, consider issues not raised in the court below. United States v. One 1971 Mercedes Benz, 542 F.2d 912 (4th Cir.1976); United States v. Chesapeake & Ohio Ry. Co., 215 F.2d 213 (4th Cir.1954).
 
 
 25
 Farish and Bly also argue that even if the privity requirement, as historically applied by the Virginia Supreme Court, bars their actions, the Virginia Supreme Court, on considering the matter anew, would take a more modern approach, cut through the privity bar and all its entanglements, and simply permit such suits to be brought by any person injured by manufactured products. The simple answer to that forlorn argument is that the Supreme Court of Virginia has spoken many times in this area, and we are not free to anticipate a hypothetical reconsideration of its view.
 
 
 26
 Finally, Bly and Farish contend that under the controlling Virginia conflict of law rule, the substantive law of Ohio and Missouri, respectively, govern the outcome of these cases. There is simply no merit to these contentions. We have held in Bilancia v. General Motors, 538 F.2d 621 (4th Cir.1976) that under Virginia law, the law of the state where the injury occurs supplies the substantive law governing warranty claims. See also White v. American Motors Sales Corp., 550 F.Supp. 1287 (W.D.Va.1982).
 
 
 27
 In view of the above, the decisions of both district courts respectively dismissing the actions in Farish and Bly are affirmed.
 
 
 28
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 29
 When "everyone is out of step but Johnny," it behooves Jonathan to reexamine his position. Having done so, I, nevertheless, am led to the firm conviction that the correct rationale for decision is somewhere between that announced by Judge Sprouse, speaking for the en banc majority, and that of Judge Phillips in dissent, with the final conclusion on the merits of the two cases presently before us favoring the defendants.
 
 I.
 
 30
 Judge Sprouse has set forth, succinctly yet completely, all that need be said to demonstrate that, under Virginia law, retrospective application of statutes is disfavored: "Legislative enactments are applied prospectively unless the legislature indicates a contrary intent or the statute relates to remedies or procedural matters." At 1114.[1] The general substantive portion of the 1962 anti-privity statute, standing alone,[2] without its "however" appendage, should, Judge Sprouse has reasoned, be properly construed to reach only cases in which the machinery or other goods had been distributed and injury had occurred after June 29, 1962, the effective date of the statute ending lack of privity as a defense.
 
 
 31
 Judge Phillips, in dissent, on the other hand, has sought, in scintillating fashion, to ground a contrary interpretation, assertedly deriving from "the plain meaning canon," on the secondary, temporal and procedural addition to the anti-privity statute:
 
 
 32
 however, this section shall not be construed to affect any litigation pending on June twenty-nine, nineteen hundred sixty-two.
 
 
 33
 His argument has proceeded along a course which should delight a rigid grammarian. The two cases before us were not "litigation pending on June 29, 1962." Therefore he has reasoned, and here, with respect, a gigantic and unjustified logical leap is required, that the two cases are ones to which the general, substantive language must apply retrospectively, because they do not fall within the expressed "exception" for litigation pending.
 
 
 34
 However, accepting Judge Sprouse's approach, such expressio unius est exclusio alterius treatment[3] ignores the initial, essentially indisputable consideration that, irrespective of the "however" clause, already the two cases independently are not "affected." They do not require the "however" clause to escape being affected by the anti-privity statute. Judge Phillips has not dealt with why a major assumption implicit in his argument is justified. The unstated assumption is that the "however" clause has necessarily extended its thrust to, and overturned, the prospectivity presumption to which, on Judge Sprouse's line of attack, the principal portion of the statute was entitled.[4]
 
 
 35
 It is evident, however, that no violence is done either to the "however" clause or to the extent of its application by the conclusion Judge Sprouse has expressed for the majority of the en banc court, namely, that, in cases involving goods manufactured and distributed before June 29, 1962, the statute did not apply even though there was then no litigation pending. It is perfectly logical to suppose that someone with a hand in formulation of the language of the statute was a belt-and-suspender type. He or she may have known of the non-explicit general rule presuming against retrospective application, but have desired, in addition, to be doubly sure by expressing the intent that: "and, also, in case of any pending litigation, since manufacture and distribution must have occurred before June 29, 1962, the privity requirement in full force prior to the statute's effective date would not be affected."
 
 
 36
 Alternatively, and at least as probably, there is a well recognized canon of construction:
 
 
 37
 As a general rule, a new statute should apply to "cases pending on the date of its enactment ... unless manifest injustice would result, or there is a statutory directive or legislative history to the contrary."
 
 
 38
 Central Freight Lines, Inc. v. United States, 669 F.2d 1063, 1069 (5th Cir.1982). Cf. Beazer v. New York City Transit Authority, 558 F.2d 97, 100 (2d Cir.1977) rev'd on other grounds 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1978):
 
 
 39
 A change in the law is to be given effect in a pending case unless there is some indication to the contrary in the statute or its legislative history or unless manifest injustice would result.
 
 
 40
 It is difficult to avoid the conclusion that the author of the "however" clause was shopping for apples, but ended up purchasing oranges. In Virginia the "cases pending" rule has application only to changes in practice and procedure. Walke v. Dallas, Inc., 209 Va. 32, 35, 161 S.E.2d 722, 724 (1968). Where a matter is substantive the rule is otherwise. See Washington v. Commonwealth, 216 Va. 185, 193, 217 S.E.2d 815, 823 (1975):
 
 
 41
 The general rule is that statutes are prospective in the absence of an express provision by the legislature. Thus when a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights.
 
 
 42
 The legislative draftsman appears not to have though the matter through and probably failed to appreciate that cases of the kind involved in authorities such as Central Freight and Beazer concerned amendments in (not total reversals of) already existing law, under which cases could successfully have been brought and, theretofore, commonly had been brought, and so might be pending. Alternatively they concerned situations presenting a legislative history of the particular statute which explicitly supported the act's retrospective application to pending cases in circumstances resulting in no manifest injustice. In the instant cases, on the contrary, we must address a sharp and complete reversal of existing substantive law, creating for the first time a cause of action which never theretofore had existed. There is no explicit provision of retroactivity, and retroactivity, for reasons subsequently alluded to in this concurring opinion would lead to manifest injustice. Thus the "however" clause was surely an effort, though an inadequately tailored one, to rule out retrospective application.
 
 
 43
 Hence it appears that, while it may have been excessive caution on the legislature's part to spell out that "litigation pending" was not affected, in all events the use of "litigation pending" was not intended to raise a negative implication that, whenever litigation was not pending, the case would of necessity be affected by the new statute. Consequently, additional litigation, over and beyond that which was pending, could qualify as not affected by the anti-privity statute.[5]
 
 
 44
 Indeed, that possibility becomes a virtually inescapable conclusion when one pauses to consider that the purpose of the "however" clause was unmistakably to reduce, not to expand, the number of potential recoveries by plaintiffs injured by goods manufactured by persons with whom they were not in privity.[6] On the logical path Judge Phillips has endeavored to pursue, he must, therefore, jettison the "however" clause, and commence with the assumption that the general language, "[l]ack of privity ... shall be no defense" in and of itself, without reference to the "however" clause, should be presumed to apply retrospectively. Yet we know that the Virginia law, for the reasons delineated by Judge Sprouse, should be approached just the other way 'round.[7]
 
 
 45
 There are, indeed, multiple pragmatic considerations which dictate a reading to the effect that if, for other reasons, the general, substantive part of the statute should be read prospectively, that conclusion is not contradicted by the language of the procedural "however" clause. If anything, the "however" clause reinforces the argument in favor of prospective application.[8] Turning to those pragmatic considerations:
 
 
 46
 1) On June 29, 1962 there should have been few, if any, pending cases in which a plaintiff would already have sued a defendant solidly ensconced behind the well established absence of privity barrier erected by Virginia law. The suit would have been a useless, and money wasting, exercise.
 
 
 47
 2) Even in the unlikely event that there were such a suit, what public purpose would be served by punishing the diligent pursuer of a claim who, had he simply waited until June 30, 1962 to file suit, would not have been barred? Then litigation would not have been pending on June 29, 1962. While a legislature could theoretically, of course, have acted in so capricious a manner, it is a sensible canon of construction that legislation will not be so construed as to reach an irrational result if another, less purposeless, meaning is at hand. F.B.C. Stores, Inc. v. Duncan, 214 Va. 246, 249-50, 198 S.E.2d 595, 598 (1973) ("In construing a statute to ascertain legislative intent courts presume that the legislature never intends application of the statute to work irrational consequences.").[9]
 
 
 48
 3) Pursuing a related topic, the "however" clause must have been intended to prevent some retrospective application. Yet it would practically prevent none at all, if construed as the dissent contends, in cases where manufacture and distribution and injury, as well, all had occurred donkey's years before June 29, 1962, so long as the plaintiff had not jumped the gun by bringing suit before the statute was enacted. To make the institution of suit a basis for a penalty to the diligent plaintiff would be devoid of sense and an intention along those lines should not readily be ascribed to the Virginia legislature.
 
 
 49
 4) Moreover, the "litigation pending" bar to suit would, in truth, be no bar at all, wholly diaphanous, if not non-existent. Under Virginia law, in 1962 as today, a plaintiff, without generating a statute of limitations problem, may take a voluntary non-suit and reinstitute the case so long as he does so within six months of the non-suit or within the original period of limitation, whichever period is longer.[10] Hence, the plaintiff in any litigation pending at any date, June 28, 1962 or earlier, could readily have escaped any adverse consequences of the "however" clause by the simple act of taking a voluntary non-suit and suing anew on June 30, 1962 or thereafter.[11]
 
 
 50
 5) In abstract theory, a plaintiff who somehow was fearful that a limitations statute might run before June 29, 1962 might have decided that he had to institute suit, with the consequence that his case would constitute "litigation pending." In the first place, however, the possibility is a remote one since the cause of action could only have accrued for the first time on June 29, 1962.[12] There simply was no cause of action before that date, so to speak of accrual at any earlier date would be meaningless. Hence, it is unlikely in the extreme that limitations concerns could have developed prior to June 29, 1962 (or indeed, the limitations period being two years,[13] until June 29, 1964). Even in the unlikely event that they did, what public purpose would lie behind a statute which would penalize one plaintiff for being diligent in converting his claim into litigation pending while rewarding all others for being dilatory?
 
 
 51
 6) The consideration that limitations could not commence to run until June 29, 1962, the earliest date on which the basis for a successful action against a defendant not in privity with the plaintiff arose, generates extremely disturbing consequences should Judge Phillips' reading of the statute be adopted. Humble Oil & Refining Co. v. Copley, 213 Va. 449, 192 S.E.2d 735 (1972) does not assist Judge Phillips in the making of his argument. He has sought support from a brief observation that a later enacted statute did apply. There, however, the Virginia law as to whether a right to sue existed prior to a statute's effective date (i.e., whether the statute merely codified extant common law) had never been authoritatively laid down, one way or the other. At the same time the law of both sister states, North Carolina and South Carolina, was to the effect that the cause of action did exist at common law, even prior to Virginia's adoption of the statute spelling that out, i.e. the Uniform Commercial Code, effective January 1, 1966. The Code confirmed that Virginia's law was, and for some time had been, the same as that of South Carolina and North Carolina. The Code suggested that the law had all along been in accord with its teachings, even prior to enactment by the Virginia legislature, since the purpose of the Uniform Commercial Code was to amalgamate into one statute the best rules theretofore adopted all over the United States. It buttressed, therefore, the conclusion to be drawn from persuasive North Carolina and South Carolina holdings.
 
 
 52
 Consequently, the observation that the Code applied although the transactions and events precipitating the cause of action occurred after the 1966 effective date of the Uniform Commercial Code was irrelevant to the decision. Even had the transactions antedated the Uniform Commercial Code, the Virginia common law would have mandated the same result.
 
 
 53
 The Humble case is, in no way similar, therefore, to the cases which engage our attention. They involve situations in which the substantive law was explicitly reversed by the intervening statute, so that the result is totally different, depending on whether the new law or the old law applies. A stationary piece of machinery or of jewelry concealing a sharp jagged edge given to cutting the unwary, or another object manufactured 50 or even 100 years ago might have endured those many years, to inflict an injury in 1965, 1984, or indeed the year 2000. Also it could have injured in 1900 or at any time before that date. Since the statute makes no differentiation between wholly retrospective cases, on the one hand, where manufacture, distribution and injury all had preceded 1962 and partially retrospective ones on the other, where manufacture and distribution predated 1962, but injury occurred thereafter, Judge Phillips is left with no alternative but to contend that exposure to liability should be deemed to have arisen even after a lapse of a century or more from the manufacture and distribution or, worse, from the date of the injury during which no such liability existed and the machine or piece of jewelry or other object had long since passed from the control of the manufacturer. The resurrection of Lazarus would pale by comparison.[14]
 
 
 54
 We find that result unacceptable, and are satisfied that the Virginia courts would also find it unacceptable, in the absence of an explicitly stated legislative objective to the contrary. Such a reading would not redound to the credit of the Virginia legislature. The Commonwealth's legislators are, however, reasonable people and presumed to enact reasonable, not unreasonable, statutes.
 
 
 55
 7) When a manufacturer in 1955 produced a manufactured item, he, she or it would have been assured by any competent attorney consulted on the matter that the law precluded recovery in an action brought by anyone not in privity with the manufacturer charging that the manufactured goods were defective. There was consequently no occasion for the manufacturer to factor into the price charged for the machine the possible costs, legal fees and damages associated with such a suit.[15] The manufacturer would, accordingly, have had no occasion to set a reserve charged against the price to cover the then non-existent risk. Similarly, there would have been little or no justification for buying insurance to protect against such a risk.
 
 
 56
 There is no need to belabor the question of whether the right not to be exposed retrospectively to such liability was "vested" or merely "substantive." While vested rights which have already matured are generally acknowledged to enjoy constitutional protection against eradication, also retrospective eradication is not favored for substantive rights and protections, including the one here involved, Shiflet v. Eller, 228 Va. 115, 319 S.E.2d 750, 753 (1984). There is every reason, therefore, to reach a result which avoids the complex constitutional issue arising if the statute is construed to wipe out the defendants' rights to be free from suit where manufacture and distribution preceded the statute's effective date. E.g. Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944):
 
 
 57
 If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality--here the distribution of the taxing power as between the State and the Nation--unless such adjudication is unavoidable.
 
 
 58
 That leaves to be dealt with only the effort made by Judge Phillips to analogize the instant case to one involving a statute, held by the Virginia Supreme Court to have abolished retroactively the defense of usury, when employed by corporations. Town of Danville v. Pace, 66 Va. (26 Gratt.) 1 (1874).[16] However, verbiage identity does not necessarily control. It is the circumstances in which the words have been employed, that is ideas or facts, rather than formalisms, which decide cases. A corporation which has signed an "usurious" note has expressed its willingness to be bound, and should not be surprised if it is held liable to adhere to its promise. It presumably could not have borrowed needed funds on better terms. Manufacturers who distributed their wares before June 29, 1962 had done nothing to expose themselves to liability to persons with whom they were not in privity, indeed had every reason to believe there was none.
 
 
 59
 The law's impersonal protection on public purpose grounds of the corporation from the consequences of its knowing acts can be retrospectively eliminated without saddling the corporation with unanticipated liabilities. It is difficult to characterize as vested or substantive a supposed right to welsh, in whole or in part, on a debt intentionally incurred. When lawmakers have previously perceived a public policy entitling a corporation to avoid its willingly assumed obligation, it is not too much to allow and, indeed, to expect reinvigoration of the obligation when other, countervailing public interest considerations so require. Hence there is no proper analogy to be drawn between: a) the legislative creation of a previously entirely non-existent liability depending, so far as the manufacturer is concerned, exclusively on acts done in the past and b) the removal retroactively of a statutory defense for usurious corporate notes which had been entered with an intention on the part of the corporation to pay them when due, in accordance with their terms, or else had been uttered with an intention approaching fraud to mulct the lender.[17]
 
 
 60
 Allen v. Mottley Construction Co., 160 Va. 875, 170 S.E. 412 (1933) relied on by Judge Phillips poses another easily distinguishable situation. A statute setting up a limitations period of one year for claims theretofore subject to no statute of limitations, concerned only a remedy. The plaintiff could have protected himself from any adverse consequences of the act by acting within the newly imposed twelve months' limitation period. No similar route to protection from suit is available to the manufacturers in the two cases before us. The two cases, in short, involve a combination of right and remedy, whereas Allen applies to remedy only. Allen, 160 Va. at 887, 170 S.E. at 417.II.
 
 
 61
 At the outset, I expressed some lack of complete satisfaction with each of the routes presented, one by the majority, the other by the dissenter. Up to this point I have concentrated on an attempt to scout the dissenter's approach to things. Now, however, we have arrived at the time to express doubt about the validity of achieving resolution of the question presented simply by application of a general maxim of statutory construction to the effect that prospective rather than retrospective application is preferred. That is so because we are not presented, in the case of injuries suffered after the effective date of the act through contact with goods manufactured and distributed before the effective date, with a unitary choice between "prospective" and "retrospective."
 
 
 62
 The question, from whichever side it is viewed, has both "prospective" and "retrospective" aspects. As of June 29, 1962, one must look back to the manufacture and distribution, yet ahead to the injury. From the manufacturer's point of view, having lost all connection with the goods or machinery upon distribution, the matter is altogether retrospective. For the consumer, however, the dates of manufacture and distribution are irrelevant. He concentrates solely on the injury, which has occurred well after June 29, 1962, the effective date of the statute.
 
 
 63
 Thus, the reading out of the equation of the "however" clause has not automatically mandated victory for the manufacturers in the two cases presently before us. We have still to examine the extent of the applicability of the prospective presumption to cases not wholly antedating the statute, where the considerations are half-retrospective, half-prospective in character. The question yields no easy answer. The hardships to manufacturers distributing before the statute's enactment are fully equalled by the unfairness to consumers who are injured well after enactment. The consumers had nothing to do with the dates of manufacture and distribution of the offending instrumentality.
 
 
 64
 It is probably most just to say that the intention of the 1962 statute must be gleaned without the benefit of a presumption either way on the subject of "prospectivity" versus "retrospectivity."[18] Taking such an approach, I am, in the end, however, led to the conclusion that the correct reading of the statute is that both 1) manufacture and distribution and 2) injury must post-date the enactment of the 1962 statute for a cause of action to arise.
 
 
 65
 The first and primary consideration is the absence from the statute of any provision for a cut-off in the right to sue whenever an antecedent specified length of time following manufacture and distribution has occurred prior to the statute's enactment. If the statute had provided for repose after a period reaching back in time, (in contrast to the more usual forward looking limitations statute), under which items manufactured and distributed not more than 2, or 6 or even 10 years before June 29, 1962 could form the basis for recovery on injuries occurring after the statute's effective date,[19] any unjust features, viewed from the defendants' point of view would be greatly minimized, if not entirely eliminated. Such a provision would not only introduce a large element of reasonableness favoring retrospective application for the short and specific period of time spelled out in the statute. It also, depending on the language employed, might constitute a positive legislative expression of intent that there be a measured amount of retrospective application.
 
 
 66
 The other major consideration is that, assuming retrospectivity was the legislative intent, the inevitable consequence is the extinction of rights of the manufacturer. Whether they are vested, or merely substantive, rights need not detain us when we consider the rights simply in the context of ascertaining legislative intent, rather than in terms of constitutionality vel non. A manufacturer selling goods in Virginia at any time prior to 1962 was entitled to structure his, her or its conduct on the understanding that he, she or it was not exposed to the risk of suit and recovery by anyone not in privity. That was a right. A retrospective application would infringe it.[20]
 
 
 67
 Turning around, if we assume, for purposes of inquiry, that the legislature intended only prospective application, there were no rights for a plaintiff to recover in a non-privity situation prior to June 29, 1962. Therefore, when the legislature announced that it was creating a right to recover even in the absence of privity, it was saying that the right would arise only if and when the injury has been occasioned by a piece of machinery or other object, initially distributed after the statute's effective date. Under that interpretation, the plaintiff is not, unlike the defendant, when the tables are turned, put in the position of losing any right he ever had.
 
 
 68
 Consequently, in my view, the conclusion arrived at by Judge Sprouse is the correct one, and I, accordingly, concur.[21]
 
 
 69
 JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:
 
 
 70
 I respectfully dissent.
 
 
 71
 Our most trustworthy guides to what the Supreme Court of Virginia would probably hold on the applicability of this 1962 anti-privity statute are the plain meaning canon of statutory construction and the most directly relevant judicial precedents to be found in decisions of that court. Looking to those sources, I am persuaded that the state court would most likely hold that the anti-privity statute was intended by the legislature to apply, and therefore did apply, to these two cases. I would accordingly now hold that it did so apply and would reverse in both cases on that basis.
 
 
 72
 * I have no quarrel with the majority's summary of the general principles of statutory construction applicable to questions of the "retrospectivity" or "prospectivity" of statutes. My difference is only with their application here.
 
 
 73
 In the anti-privity statute itself, the critical language bearing upon its intended temporal applicability is plain and unambiguous.
 
 
 74
 Lack of privity ... shall be no defense in any action brought against the manufacturer or seller of goods ...; however this section shall not be construed to affect any litigation pending [on the date of the statute's original enactment]. Va.Code Sec. 8.2-318 (emphasis supplied).
 
 
 75
 By its plain terms, this statute's substantive provisions are to apply in any action brought after the specified date. This bespeaks a simple intention--not dispelled elsewhere in the statute--that this substantive rule should control the determination of all relevant issues in any action thereafter brought, without regard to the time over which and the sequence of events by which claims and defenses raised in the action may have matured. By this choice of language the legislature deliberately chose to make a procedural event, commencement of action, in relation to a legislative event, effective date, rather than any out-of-court events (such as manufacture, or sale, or injury) the determinant of the statute's applicability to particular litigation claims and defenses. While out-of-court events might well have been (and frequently are) used to define the precise temporal applicability of a statute, the procedural event actually chosen here is perfectly serviceable for the purpose and gives rise to no intrinsic ambiguity. Its choice simply makes irrelevant to the applicability question the time of occurrence of any out-of-court events affecting the legal relations put in issue in "any action" "brought" after the specified date (except that, of course, all such "events" must ordinarily have occurred before "any action" can have been "brought").
 
 
 76
 Against this plain meaning interpretation, the manufacturers contend for an interpretation whose acceptance would force implication of language not present in the statute and not needed to give it a perfectly coherent meaning as written. Their suggested interpretation would require reading the statute as if it provided, "lack of privity shall be no defense in any action grounded in a sale hereafter made that is brought against a manufacturer ... etc." But, aside from the fact that the language is simply not in the statute, its implication would make the last clause in the statute meaningless. For no action grounded in a sale made after the effective date could be pending on that date. This emphasizes that the statutory language pegging temporal applicability solely to the litigation event of commencement of action after a specified date was intended and can only be interpreted to make the time of all out-of-court events affecting legal relations wholly irrelevant to the statute's applicability. See Raven Red Ash Coal Corp. v. Absher, 153 Va. 332, 149 S.E. 541, 542 (1929) ("[e]very part of an act is presumed to be of some effect, and is not to be treated as meaningless unless absolutely necessary").
 
 
 77
 Concededly somewhat less plain is the language governing the general applicability of the state's 1966 version of the Uniform Commercial Code (the Code), into which the earlier 1962 anti-privity statute was later incorporated. Section 8.10-101 of the Code provides, in pertinent part, that the Code "shall become effective on January one, nineteen hundred sixty-six. It applies to transactions entered into and events occurring after that date."
 
 
 78
 Laying aside the plausible possibility that incorporation of the 1962 anti-privity statute into the 1966 Code was not intended to affect the former's retained special applicability provision, the Code's general applicability provision is not at odds with the plain meaning interpretation above discussed. Indeed, Bly and Farish both rely on the Code's general applicability provision to bolster their contention that the Code-incorporated anti-privity statute was intended to apply to cases such as those before us. Specifically, they focus on the words "transactions and events occurring after [the effective date]" as necessarily referring to the events or transactions which ultimately mature or accrue a claim under the Code's provisions. On this interpretation, the "events" to which the Code's provision are made applicable after its effective date are necessarily the infliction of the injuries which caused their respective claims under the Code to accrue--to become actionable. The contrary contention pressed by Otis and Courion, and accepted by the majority here, is that the reference is to the originating transaction or event from which the claims are ultimately derived--here the original sale of their products--and that these of course each occurred before the effective date of the Code, hence outside its stated reach.
 
 
 79
 Assuming that the general applicability provision of the Code, Sec. 8.10-101, is controlling or at least must be read in pari materia with the anti-privity statute's integral applicability provision,[1] the claimants' contention is the much more persuasive one. The interpretation argued by Otis and Courion would mean that the Code was not intended in general to apply to any claims or defenses but those arising wholly from post-enactment occurrences. This is simply an unreasonable interpretation, given the protracted periods of time over which many putative U.C.C. claims mature into actionable ones and the relative insignificance and possible obscurity of the earliest antecedent facts in the chain of events leading to an actionable claim or ripened defenses to it.
 
 
 80
 More critically, it is an interpretation that has been flatly rejected by the Supreme Court of Virginia. In Humble Oil & Refining Co. v. Copley, 213 Va. 449, 192 S.E.2d 735, 736 (1972), that court held that under Sec. 8.10-101, the Code applies in a suit on a note that was executed before the effective date of the Code where the transactions and events that precipitated demand for payment and made the claim an actionable one occurred after the effective date. In short, the court held that, under Sec. 8.10-101, the "transactions or events" upon which applicability of the Code turned are those "transactions or events" that accrue a judicial claim, that make it actionable, and not antecedent events or transactions, even where those might be essential to proof of claim or defense. See also Turner v. Manning, Maxwell & Moore, Inc., 216 Va. 245, 217 S.E.2d 863 (1975) (Code enacted in 1966 applied without comment to action in respect of products manufactured in 1960 and 1962).
 
 
 81
 Against this plain meaning interpretation, Otis and Courion mainly press, and the majority opinion mainly relies upon, the presumption that a statute shall only have prospective effect. Here, they say, the presumption should prevail because the anti-privity statute does not plainly manifest an intent that it shall apply retrospectively; and because to give it retrospective effect would be to impinge upon substantive rights, i.e., here, presumably, the pre-1962 right in Otis and Courion to manufacture and sell products without exposure to liability for breach of warranty to any persons but those in privity with them.
 
 
 82
 There are two basic responses to this. The first and most critical is that it is by no means clear that application of the anti-privity statute to these two claims is properly considered a "retrospective" application. As the Supreme Court of Maine recently observed in the course of considering almost the identical question: " 'Retroactivity' itself is a deceptively simple word for a complex set of problems." Adams v. Buffalo Forge Co., 443 A.2d 932, 941 (Me.1982).
 
 
 83
 It all depends of course upon the proper referrant for the term. The statute here in issue is not retrospective in its application to these cases if the proper referrant is solely the event, personal injury, that made the two claims actionable--that caused them to "accrue." This is a perfectly plausible, indeed the most plausible and generally accepted, application of the general presumption against retrospectivity principle. The Adams court in the well-reasoned Maine case just cited, so held. Id. at 944. There is powerful support for such a general view of the retrospectivity principle's proper application in decisions of this circuit. See United States v. Village Corp., 298 F.2d 816, 820 (4th Cir.1962) (Haynsworth, J.) (statute not retrospective merely because its application may touch pre-enactment events); Smith v. Moore, 225 F.Supp. 434, 447 (E.D.Va.1963), rev'd on other grounds, 343 F.2d 594 (4th Cir.1965) ("statute is not rendered retroactively merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment"). And of course this view is necessarily implicit in the Virginia Supreme Court's decision in Humble Oil, supra.
 
 
 84
 Under a properly discriminating view of true retrospectivity in this context, therefore, retrospective application of the anti-privity statute would only occur in a case in which both manufacture and injury had occurred prior to enactment. That, of course, is not this case. Significantly, however, it is a case directly comparable to the recent Virginia case, Shiflet v. Eller, 228 Va. 115, 319 S.E.2d 750 (1984), principally relied upon by the majority in its assessment of the Virginia court's present views on impermissible retrospective operation of statutes. In Shiflet, the Virginia Supreme Court held that to apply a 1979 statute authorizing covenants-not-to-sue to permit a 1981 covenant to determine the legal relations of parties to a 1977 automobile accident would be impermissibly retrospective because destructive of "substantive rights" fixed upon the pre-enactment occurrence giving rise to joint-tort liability in 1977.[2]
 
 
 85
 The critical distinction between Shiflet and the cases before us is precisely the fact that in Shiflet but not in our cases the legal relations sought to be affected by the statute had been fully fixed on claims and defenses fully accrued under extant legal principles before the statute's enactment.[3] The Shiflet discussion of retrospectivity would therefore only be persuasive on the point for our cases had the claimants' injuries as well as the defendants' sales in our cases occurred before enactment of the anti-privity statute, thereby fully fixing as of injury date the legal relations now sought to be affected by a later-enacted statute. Cf., e.g., Myers v. Council Manufacturing Corp., 276 F.Supp. 541 (W.D.Ark.1967) (anti-privity statute would operate retrospectively if applied to pre-enactment injury). Nothing said in Shiflet therefore disturbs the Virginia Supreme Court's plain implication in Humble Oil & Refining Co. v. Copley, 213 Va. 449, 192 S.E.2d 735 (1972), that to apply a statute to determine a claim grounded in a pre-enactment transaction but only made actionable by post-enactment events is not to apply it with impermissible retrospective effect.[4]
 
 
 86
 The second response to the presumption against retrospective contention is that, assuming the application here would be retrospective, the presumption is only that, a presumption in aid of statutory construction. It could not override the plain meaning of Sec. 8.2-318 nor the compelling implication of Sec. 8.10-101, as interpreted by the Virginia court in Humble Oil, that both of these applicability provisions were intended to make the statute applicable to cases such as those before us.
 
 II
 
 87
 Direct judicial precedent may, in the end, be the surest guide to the Virginia Supreme Court's likely view of the intended and permissible application of the anti-privity statute to these cases. In the old case of Town of Danville v. Pace, 66 Va. (26 Gratt.) 1 (1874), the court considered the effect of another statute abolishing a long-standing defense "in any action," and making no further reference to its intended applicability. The statute there in issue provided:
 
 
 88
 No corporation shall hereafter interpose the defence [sic] of usury in any action; nor shall any bond, note, debt or contract of such corporation be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury.
 
 
 89
 Id. at 3.
 
 
 90
 The principal issue presented was whether this statute was applicable--and the usury defense therefore not available--in actions to collect on notes executed prior to the statute's enactment. The defendant, claiming non-applicability, relied principally upon the presumption against retrospectivity, and pointed to the absence of any clear statutory language manifesting an intent for retrospective operation. The court, however, held that the statute did manifest an intent that the statute should apply "retroactively."
 
 
 91
 It will be observed that the words used are very comprehensive. "No corporation shall hereafter interpose the defense of usury in any action." The words "any action," necessarily include suits instituted before as well as after the passage of the act. There is nothing in the context to give them a more limited operation. The defense is prohibited in all cases. In order to adopt the construction insisted on by the defendant, other words must be incorporated into the body of the act so as to make it read, "no corporation shall hereafter interpose the defense of usury in any action upon a contract hereafter made." But clearly the legislature did not intend so to confine the effect of the enactment. Had such been the purpose, nothing would have been easier than to have used words appropriate to that object.
 
 
 92
 Id. at 4 (emphasis added).
 
 
 93
 This decision, venerable it is true, stands yet unshaken, so far as we are advised, as precedent on the narrow issue of statutory construction presented.[5] That issue, critically, is precisely that one presented here--the effect upon a statute's temporal applicability of a simple provision that a previously available defense may not be "interposed" (read "shall be no defense") "in any action." Significantly, the Town of Danville court gave the provision the broadest possible reading of applicability, holding that it manifested a legislative intent to make the defense no longer available even in pending litigation.[6]
 
 
 94
 As the majority opinion correctly points out, variant language in the many anti-privity and comparable statutes from other jurisdictions that have been challenged on retrospective applicability grounds makes the resulting interpretive decisions dubious as persuasive authority for either side in the cases at hand. Whatever the numerical balance of those decisions,[7] Town of Danville stands, irrespective of the balance, as uniquely pertinent precedent for Virginia law as applied to the cases before us. To come to a different result with respect to the anti-privity statute than that reached by the Town of Danville court with respect to the usury defense statute, the Virginia courts would necessarily have to distinguish or overrule that venerable decision. Of course that is always possible, but as a federal court seeking to divine state law in such a situation, I think we must in prudence and deference assume that precedent this long undisturbed and this long unaffected by any general developments drawing it in question, continues to stand as controlling state law.[8]
 
 
 95
 I would for the reasons above reverse in both of these cases and remand for their respective proper dispositions free of the privity defense.
 
 
 96
 I am authorized to say that Chief Judge HARRISON L. WINTER, Circuit Judge WIDENER, and Circuit Judge K.K. HALL join in this opinion.
 
 
 
 [1]
 At the time of the manufacture of the two products involved in these cases a number of exceptions to the privity requirement had developed in the common law of Virginia but none of them are applicable here. See Speidel, The Virginia "Anti-Privity" Statute: Strict Products Liability Under the Uniform Commercial Code, 51 Va.L.Rev. 804, 816 (1965); Emroch, Statutory Elimination of Privity Requirement in Products Liability Cases, 48 Va.L.Rev. 982 (1962)
 
 
 [2]
 At the time the elevator doors were purchased, the company's name was Security Fire Door Company. By reason of a corporate name change on January 9, 1976, this company was renamed Courion Industries, Inc
 
 
 [3]
 Farish also sued Otis Elevator Company, alleging it had negligently performed its contractual duty to inspect the elevator and door. The district court granted summary judgment to Otis based on its interpretation of an exception provision in the Virginia Workmen's Compensation Act. This court reversed that decision and denied Otis' motion for rehearing. Farish v. Courion Industries, 722 F.2d 74, 78-81 (4th Cir.1983)
 
 
 [4]
 The uncontradicted evidence was that after the accident, Bly stated, "I wasn't looking where I was going and I ran into that damn can."
 
 
 [5]
 713 F.2d at 1043 n. 2
 
 
 [6]
 It is only coincidental that Otis Elevator Company was a defendant in both Farish and Bly. In Farish it was a co-defendant with Courion. The Farish panel affirmed the district court's dismissal of Courion on the privity grounds involved in this appeal but reversed the portion of the district court's decision dismissing Otis on other grounds, remanding Farish v. Otis for trial. Farish v. Courion Industries, Inc., 722 F.2d 74, 79-81 (4th Cir.1983). Otis' petition for rehearing was denied in April 1984
 
 
 [7]
 The dissent would distinguish Shiflet from the facts of the cases sub judice because both the accident and the filing of the suit in Shiflet were prior to the enactment of the statute. It was the release, however, which involved the substantive rights discussed by the Virginia court and that occurred in 1981, after the passing of the statute
 
 
 [8]
 The court also held that retroactive application of the enactment would have been invalid as violative of Eller's due process rights under the state constitution. Shiflet, 319 S.E.2d at 754 (citing Duffy v. Hartsock, 187 Va. 406, 416, 46 S.E.2d 570, 575 (1948)). See DeMars, Retrospectivity and Retroactivity of Civil Legislation Reconsidered, 10 Ohio N.L.Rev. 253 (1983); Greenblatt, Judicial Limitations on Retroactive Civil Litigation, 1954 Nw.U.L.Rev. 540
 
 
 [9]
 I am indebted to my colleagues, Judge Phillips and Judge Murnaghan. Judge Phillips for his dissent which, in his great style, presents a number of arguments that the majority considered and declined to accept, and to Judge Murnaghan for his fine response to Judge Phillips' arguments. The principal thesis of the majority opinion is that Courion and Otis, prior to 1962, possessed concrete rights and that our task on review is to determine if the Virginia legislature intended to affect those rights retroactively. We, of course, view the statutes and Virginia cases in our search for the answer. A principal issue is whether the rights affected by the anti-privity statute are substantive or procedural--another is whether the Virginia legislature intended the pre-statute sales or the post-statute accidents to be the "transactions" effected by the anti-privity statute. We treat these and subsidiary issues. As the writer of the majority opinion, I simply disagree with Judge Phillips' analysis of Humble Oil & Refining Co. v. Copley, 213 Va. 449, 192 S.E.2d 735 (1972) and Town of Danville v. Pace, 66 Va. (26 Gratt.) 1 (1874) as they relate to this case. Judge Murnaghan's concurring opinion makes it happily unnecessary to respond more fully to that analysis and others in the dissent. I agree with and readily accept the reasoning expressed in the concurring opinion. Judge Murnaghan's expressed difference with a part of the majority opinion is, in reality, not a difference. The reasoning in the majority opinion commences with the "general maxim of statutory construction" that in the absence of language to the contrary, prospective application of a statute is presumed. More than that is treated in the majority opinion, but no useful purpose would be served in extending the discussion in greater detail than that which, I believe, has been said adequately in the majority and concurring opinions
 
 
 [10]
 The Virginia legislature did, however, enact a complementary statute in 1966 that abolished the privity defense "[i]n cases not provided for in Section 8.2-318" in the event of death, personal injury or property damage caused by negligence. Va.Code Sec. 8.01-223 (1984)
 
 
 [11]
 The dissent correctly cites Adams as supportive of the rationale that the question of retroactivity/prospectivity should be determined from the dates of accidents rather than from the dates of sales. As we have indicated, there are cases from other jurisdictions on both sides of that argument but, like Adams, they involve statutes different in language and/or purpose from the Virginia statute and are of little assistance in anticipating what the Virginia court would have considered the Virginia legislature to have meant
 
 
 [1]
 See also, Tyler v. R.R. Street & Co., Inc., 322 F.Supp. 541, 542 n. 2 (E.D.Va.1971) citing a case where a car was purchased in 1964, the Uniform Commercial Code was adopted in 1966 and injury occurred in 1967. Any argument that the statute might apply was deemed by the court to be precluded
 
 
 [2]
 Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably expect to use, consume, or be affected by the goods
 
 
 [3]
 The maxim is one of limited, if not questionable, value. Director, Office of Workers' Compensation Programs, United States Department of Labor v. Bethlehem Mines Corp., 669 F.2d 187, 197 (4th Cir.1982)
 
 
 [4]
 Since there would have been essentially no cases pending on June 29, 1962, with the well-developed privity bar standing squarely in the way of any recovery, Judge Phillips is, in effect, arguing that the statute was, in practical, if not altogether in theoretical terms, wholly retrospective
 
 
 [5]
 A similar argument narrowly missed adoption in the case of Whalen v. Ford Motor Credit Co., 684 F.2d 272, 281 (4th Cir.1982, en banc, 6-4), cert. denied 459 U.S. 910, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982). There, however, the technique was sought to be applied to expand a change in existing law, while, in the instant case, it will minimize a change in the common law. See Chesapeake and Ohio Ry. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965):
 Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms.
 Cf. Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974).
 Furthermore there was in Whalen legislative history strongly mandating against the result which the technique would have fostered. No such contra-indication exists in the two cases before us.
 
 
 [6]
 Judge Phillips in note 6 on page 1131 readily recognizes that the evident purpose of the "however" clause was to decrease the scope of the statute by foreclosing "an unlimited application."
 
 
 [7]
 Judge Phillips has stated: "I have no quarrel with the majority's summary of the general principles of statutory construction applicable to questions of the 'retrospectivity' or 'prospectivity' of statutes."
 
 
 [8]
 So much for the plain meaning canon as a construction aid. From the "however" clause, both Judge Phillips and I have derived a plain meaning. Yet each of us is led, in the end, to conclude that the other's is just plain wrong
 
 
 [9]
 Cf. United States v. Kirby, 74 U.S. (7 Wall.) 482, 486-87, 19 L.Ed. 278 (1868):
 All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.
 
 
 [10]
 Virginia Code Sec. 8.01-229 E.3
 
 
 [11]
 As the passage of a bill through the legislature on its way to enactment inevitably takes days, and more probably weeks or months, the opportunity would undoubtedly have been present for diligent counsel to have appreciated, at some substantial time before June 29, 1962, the statute's imminent enactment
 
 
 [12]
 Caudill v. Wise Rambler, Inc., 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969):
 A right of action cannot accrue until there is a cause of action. The essential elements of a good cause of action, whether based on an alleged breach of contract or on a tortious act, are a legal obligation of a defendant to the plaintiff, a violation or breach of that right or duty, and a consequential injury or damage to the plaintiff. (Citation omitted).
 
 
 [13]
 See Va.Code Sec. 8.01-243
 
 
 [14]
 At least retrospectivity "plainly" would have no limit as the statute is written. Yet I rather imagine that a court, having decided that retrospective application is called for, would somehow find a way to apply the limitations statute which would have operated to bar the claim had the cause of action been in existence at the time of the pre-1962 injury. Yet that would have involved importation of additional language into the statute so that it would read: "provided, that, if the action hereby created would have been barred on June 29, 1962 by limitations, had this statute been in effect when the injury occurred, this section shall not be construed to affect the litigation." That is at least as great an "interference" with the statute's "plain" language as the words "grounded in a sale hereafter made," to which Judge Phillips has taken exception, would be
 The "plain" fact is that often, as here, the statute must be construed. It frequently cannot simply be applied.
 
 
 [15]
 Judge Phillips has questioned the existence of any substantive right to be free of suit on claims where manufacture and distribution preceded June 29, 1962 because of the ever present duty not to sell an unsafe product. However, the most careful and circumspect of manufacturers may, despite every effort to comply with the duty, yet face suit and the attendant expenses, once a cause of action has been deemed to exist
 
 
 [16]
 As in the cases with which we are concerned, the statute abolished a defense "in any action."
 
 
 [17]
 As stated in Pace, "the statute, so far from invalidating the contract, upholds and sustains it." 66 Va. at 271-72. Further on in the opinion it is observed: "Unless we suppose it is the deliberate purpose of the debtor when he borrows the money never to return it, the only effect of the statute is to compel him to do what he intended and agreed to do at the time of entering into the contract." 66 Va. at 275
 
 
 [18]
 The injured employees have argued ingeniously, and at this stage of the matter no doubt vigorously assert that the case of Turner v. Manning, Maxwell & Moore, Inc., 216 Va. 245, 217 S.E.2d 863 (1975) supports them. The case involved, it is true, distribution in 1960 and injury in 1969. Ingenuity and validity are not necessarily identical, however. The Virginia Supreme Court moved ahead directly to decide the Turner case on the merits in the defendant manufacturer's favor. Nothing was said in the opinion even to intimate that the question before us was addressed. Probably, as counsel for the appellants have asserted, the attorneys for the defendant did not even contend that the anti-privity statute did not apply to a pre-June 29, 1962 distribution. In all events what the court did not say can hardly constitute persuasive positive authority on an issue as significant as the one presented to us
 
 
 [19]
 See, e.g., Bernick v. Jurden, 306 N.Car. 435, 293 S.E.2d 405 (1982) Bolick v. American Barmag Corp., 306 N.C. 364, 293 S.E.2d 415 (1982)
 
 
 [20]
 Reliance on United States v. Village Corp., 298 F.2d 816, 819-20 (4th Cir.1962) to reach a contrary conclusion is misplaced. The supposedly retroactive application allowed under the new statute permitted suit at any time against corporations which theretofore had ceased existence through revocation of their charters prior to institution of suit. It is simply bizarre to speak of a vested or substantive "right" in one's own demise. It was freely conceded by the defendants that there was no constitutional inhibition against retroactive application. Judge Haynsworth recognized that only remedial measures, not substantive rights were involved, and relied on legislative history plainly demonstrating that the legislative intent was for the statute to apply to the defendants. He specifically determined that the act was not thereby given retroactive effect
 An instructive contrast to Village Corp. is the recent Virginia Supreme Court decision in Sargent Electric Co. v. Woodall, 228 Va. ---, 323 S.E.2d 102 (1984):
 The carrier argues that Rule 13 is procedural in nature and disturbs no vested rights and, therefore, that the amended version may be applied retroactively. We disagree.
 * * *
 Nor may such an enactment impair rights substantive in character, even if not vested in character.
 
 
 [21]
 Having so decided, I should not like to be perceived as sympathizing with the result. From the perspective of today the requirement of privity has little to commend it. It exhibits a contempt for others akin to Cain's expressed disregard for his brother Abel. With all due deference to the consideration that our predecessors in the judiciary lived under different economic, social and cultural circumstances, I nevertheless am inclined to the view that the common law erred in the first place when it established the requirement of privity. Cf. MacPherson v. Buick Motor Co., 217 N.Y. 382, 391, 111 N.E. 1050, 1053 (1916): "Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day."
 However, the fact that one dislikes a principle of law is no excuse for ignoring it. The substantial period of time during which the privity requirement has existed has led inexorably to the growth of rights of long standing which the law should not eradicate. At least it should not do so without regard to how long ago the rights came into existence. Two wrongs simply do not make a right.
 We have no business, of course, suggesting how a legislature should perform its function. We have quite enough to do just sticking to our own last. Yet it should be observed that the statutory language, purports to apply to any action so that it does extend very widely, or, alternatively, is to be given a much more narrow reading, as the case may be. It would have made things easier, and, indeed, perhaps more equitable, if the question had been subdivided into a number of categories, so that an all-or-nothing disposition would not be called for. The possible categories include:
 1) Distribution and injury both occurred 25 or more years before June 29, 1962. There retroactivity, just as an interpretational matter, without regard to constitutional considerations, would not have been a likely legislative choice.
 2) Distribution 25 years before the statute's effective date, but injury within two years, the usual limitations period, prior to June 29, 1962.
 3) Distribution 25 years before June 29, 1962, but injury after that date.
 4) Distribution not more than 6 or 10 years before June 29, 1962, yet injury more than 2 years before that date.
 5) Distribution no earlier than June 29, 1956 or 1952, but injury less than 2 years before June 29, 1962.
 6) Distribution no more than 6 or 10 years before the statute's effective date, with injury occurring after June 29, 1962.
 7) Distribution and injury both post June 29, 1962. Obviously a cause of action exists under the facts of the final category, so long as the suit is brought within the usual 2 year period following injury.
 
 
 [1]
 An obvious reading of the two in pari materia would be as follows: (a) Section 8.2-318 originally (in 1962) made the time of occurrence of any out-of-court "transactions or events" wholly irrelevant to the anti-privity statute's applicability to particular litigation; the statute's substantive rule abolishing the privity defense was applicable to any action brought after the statute's effective date. (b) When Sec. 8.2-318 was incorporated into the Code in 1966, application of its substantive provision became subject as well to the general applicability provision, Sec. 8.10-101, of the Code. (c) In conjunction these two applicability provisions now ordain that the privity defense is abolished in all actions brought after the effective date of the Code (1966) as to events or transactions occurring after the effective date that make actionable any claim controlled by substantive provisions of the Code
 Under this reading, the anti-privity statute, in its incorporated state in the Code, would apply to the cases before us.
 
 
 [2]
 The necessarily retrospective application urged by plaintiff in Shiflet was rejected by the court both as a matter of legislative intent and, alternatively, on constitutional grounds. No direct challenge to constitutionality is before us
 
 
 [3]
 Even more clearly is this a distinguishing factor in Sargent Electric Co. v. Woodall, 228 Va. ---, 323 S.E.2d 102 (1984), also relied upon by the majority. Indeed in Sargent Electric not only had all the events fixing legal relations already occurred when the benefit-reducing rule in question was adopted, but an award based upon preexisting law had already been administratively approved. Application of the later-adopted rule in that situation would obviously have been fully "retrospective," and the court understandably so held
 Contrary to the majority's suggestion, 1115, note 7, Shiflet is not made comparable to our cases by the fact that the covenant not to sue in the former, like the injuries in the latter, occurred post-enactment. Under the Shiflet court's analysis, the legal relations at issue in that case were fully fixed under pre-1979 "release law" as of the moment of the tort's occurrence in 1977. They included a "right" in the pre-1979 joint tortfeasor, to have the 1977 accrued tort cause of action treated as indivisible for purposes of consensual release. That "right," found by the Shiflet court to be "substantive," hence inviolable by the 1979 covenant not to sue statute, was necessarily, therefore, a right already fixed when that statute was enacted. There is no suggestion in the Shiflet decision that the plaintiff's effort in 1981 to employ the covenant not to sue first authorized in 1979 was the event that first accrued the "right" found inviolable by retrospective application of the 1979 statute.
 
 
 [4]
 The Humble Oil holding also necessarily draws in question the majority's view here that under Virginia law (specifically Shiflet ), a "retrospective" application of the anti-privity statute would unconstitutionally infringe "substantive rights," hence should not be found intended by the legislature. The majority here would find those "substantive rights" in the limited extent of Otis's and Courion's exposure to liability to warranty claimants at the time of their pre-1962 sales, hence their "right" not to be further exposed. But the same--or an even more basic--"substantive right" was undoubtedly present in Humble Oil in respect of the maker's limited exposure to liability on the note executed prior to enactment of Virginia's Commercial Code in 1966. The Humble Oil court took no note of any such right in upholding the directly comparable statutory application in that case
 Aside from the precedential force of Humble Oil, the "substantive rights" the majority relies upon here are, with respect, most dubious ones in legal contemplation. The core substantive right/duty relationship implicated in the pre-enactment sales by Otis and Courion was their substantive duty not to sell a product so unsafe as to breach the implied sale warranty--to whomever it might run. The later adopted anti-privity statute did not alter the nature of that essential legal obligation in the substantive sense of reordering those defendants' "primary activities" as they were legally ordered at the times of sale by then extant products liability law (as would, for example, a statute imposing strict liability). Cf. Hanna v. Plumer, 380 U.S. 460, 475, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring) (appropriate test of whether a rule, be it "procedural" or "substantive," affects "substantive rights" is extent to which it affects "primary decisions respecting human conduct"). Abolishing the privity defense, like adopting many purely procedural rules that expand sets of potential claimants (e.g., class action rules), does not, or should not, affect the way one makes primary decisions respecting his obligation to sell only safe products. Though either may obviously make the practical consequences of such decisions more quantitatively severe, the primary duty of conduct has not been altered.
 
 
 [5]
 The essential holding of Town of Danville has since been, at least once, reaffirmed. See Allen v. Mottley Construction Co., 160 Va. 875, 170 S.E. 412, 416-17 (1933)
 
 
 [6]
 It may fairly be assumed that the "except pending litigation" clause appended to Sec. 8.2-318 reflects a legislative awareness that unless it were appended, extant law, per Town of Danville, would give the statute an unlimited application
 
 
 [7]
 The balance among the cases cited to us seems clearly on the side of finding comparable statutes applicable to the preenactment sales/post-enactment injury situations presented in our cases. See, e.g., Adams v. Buffalo Forge Co., 443 A.2d 932 (Me.1982); Hoffman v. Howmedica, Inc., 373 Mass. 32, 364 N.E.2d 1215 (1977); Forrest City Machine Works v. Aderhold, 273 Ark. 33, 616 S.W.2d 720 (1981); see also Bernick v. Jurden, 306 N.C. 435, 293 S.E.2d 405 (1982) (anti-privity statute applicable even though both sale and injury pre-dated enactment)
 
 
 [8]
 Otis and Courion attempt to avoid Town of Danville's precedential effect on the basis that that decision involved abolition of a strongly "disfavored" defense--usury. Aside from the fact that by the 1960's privity may have come to be almost as "disfavored"--if not morally opprobrious--a defense, the Town of Danville decision is not rested on that basis. It is a pure exercise in plain-meaning statutory exegesis and interpretation whose rationale is not rested on special considerations concerning the abolished defense